Argued February 11, affirmed March 8, 1921.

# POOLE v. TILFORD.

### (195 Pac. 1114.)

**Master and Servant — Question of Performance of Elevatorman's Duty at Time of Accident Held for Jury.**

1. In an action under the Employers' Liability Act by defendant's elevatorman and janitor, who fell down the elevator shaft from the first floor into the basement, at a night hour when his duties usually ended, the car having been moved while he stepped out of the building to post a letter, the submission of the case to the jury on the theory that he was acting in the furtherance of his master's business incident to his employment at the time of the accident *held* warranted.

**Appeal and Error—Verdict Based on Competent Evidence will not be Disturbed.**

2. A verdict supported by competent evidence will not be disturbed by the appellate court.

**Master and Servant—Statutory Duty to Guard Elevator Shaft not Satisfied by Precautions Used by Other Employers.**

3. In an action under the Employers' Liability Act by an elevatorman, who fell through the elevator shaft in the dark, the car having been moved during his temporary absence, evidence that most elevators could be entered from the outside is inadmissible, as the act requires the use of every practicable device for the protection of employees, and ordinary care, or that standard of care used by others, will not satisfy the statute.

**Master and Servant—Charge on Common-law Assumption of Risk Properly Refused.**

4. Where the complaint came within the provisions of the Employers' Liability Act, and the testimony supported it, an instruction on common-law assumption of risk was properly refused.

**Master and Servant—Evidence That Elevatorman had Called Attention to Dangerous Condition Admissible.**

5. In an action by an elevatorman in an office building, who in the dark fell through an elevator shaft, the car having been moved during his temporary absence, evidence that he previously notified the manager that the elevator doors could be opened from the outside was admissible to show notice to defendants.

---

1. Necessity that injured servant be acting in course of employment in order to recover under Employers' Liability Act, see note in Ann. Cas. 1918A, 1070.

3. Liability of master for injuries to servant where elevator-well is insufficiently lighted, see note in 20 Ann. Cas. 9.

**Master and Servant—Instruction on Duty to Use Elevator Safety Devices Held Proper.**

6. In an action under the Employers' Liability Act by an elevatorman, who fell down the elevator shaft in the dark, the car having been moved during his temporary absence, an instruction that if it was practicable to use a head stop, so as to prevent the door from being opened without a key, and that it would not limit the efficiency of operation it was the statutory duty of the defendants to furnish such appliance, when considered with other portions of instruction, that it was incumbent on defendants to use every device for care and precaution which was practicable to use, limited only by the necessity of preserving the efficiency of the machine or apparatus, was not open to attack as omitting the element of safety.

**Negligence — Anticipated Intervening Cause will not Excuse the Original Negligence.**

7. Though an independent cause intervened between the negligence of defendants and the injury, yet, where such intervening cause and its consequences were such as in the natural course of events should have been anticipated, defendants are liable.

**Master and Servant — Proximate Cause of Elevatorman's Injury Question for Jury.**

8. In an action by an elevatorman, who in the dark fell down an elevator shaft, the car having been moved in his absence, the question whether the master's negligence in failing to put a head lock on the door, so as to prevent unauthorized persons from reaching the elevator and moving it, was the proximate cause of the injury, *held* one for the jury.

From Multnomah: HARRY H. BELT, Judge.

Department 2.

Plaintiff instituted this action against the defendants to recover damages for a personal injury alleged to have resulted from negligence of the defendants in not providing a head-stop for the elevator on the first floor of the Tilford Building, a five-story office building situated at the northwest corner of Tenth and Morrison Streets, Portland, Oregon, of which building the defendants are owners.

It is alleged that on January 24, 1919, at the time of the injuries complained of, and for a period of about two years prior thereto, the sliding door at the entrance of the elevator on the ground floor, as well

---

7. Proximate cause and intervening condition, see note in 1 Ann. Cas. 230.

as the sliding doors at the entrance of the elevator at each floor of the building, became out of order, defective, and dangerous to the plaintiff, and tenants and patrons of the building, because the sliding doors, the thresholds, plates, latches, and guides, became worn so that the sliding doors would not remain fastened when closed, but could be opened from without by lifting them up, and they were frequently lifted and opened by tenants or occupants of the building; and that during all of this time the defendants negligently and carelessly permitted and allowed the doors to remain in this condition, although they knew of the defects and danger, or by the exercise of ordinary care could have had knowledge thereof, and by the use of care and precaution and a head-stop, which it was practical to use for the protection and safety of life and limb, could have repaired the defects and made the doors safe, without interfering in any way with the efficiency of the elevator and apparatus.

There are the usual allegations in the complaint to bring the case within the Employers' Liability Act: Or. L., §§ 6785–6791. The answer sets up assumption of risk and contributory negligence. Upon the trial, the defendants interposed a motion for a nonsuit, which was overruled, followed by a motion for a directed verdict, which was likewise overruled. The jury returned a verdict in favor of plaintiff for $1,750, upon which plaintiff had judgment. Defendants appealed.

The testimony was to the following purport:

At the time of the injury complained of, the plaintiff was in the employ of the defendants as engineer, fireman, elevatorman and janitor. His duties began at 6 o'clock in the morning and ended at 10 o'clock,

or later, at night.  His work in hauling the public
and patrons of the building in the elevator usually
ended about 9:05 P. M., when he took the patrons of
a school from the fifth to the first floor; but that did
not end his use of the elevator.  He used the elevator
in his janitor work in going from floor to floor and
taking the paper out of the rooms.  The injury
occurred on January 24, 1919, at about 9:15 P. M.
The plaintiff was operating the elevator.  School
closed at 9:00 o'clock P. M.  The ·plaintiff brought
down a load of people from the fifth floor to the first
floor.  He then went in the elevator to the basement,
extinguished the lights there, and brought the elevator
back to the first floor, turned out the lights in the
elevator, got out, closing the door thereto, and turned
out the lights in the stairway leading to the base-
ment door.  At this time a young man by the name
of Mohammed appeared, who desired to be taken to
the fifth floor.  The plaintiff told Mohammed that he
desired to step across the street to mail a letter, and
that if he would wait plaintiff would haul him up.
Mohammed went with plaintiff to mail the letter.
They were gone a minute and a half, or two minutes.
Upon their return the plaintiff opened the elevator
door and stepped "in" to turn on the lights in the
elevator, but the elevator was not there.  It had been
moved.  During the two minutes or less time con-
sumed by plaintiff in mailing his letter, someone had
"run away" with the elevator.  Plaintiff was ·pre-
cipitated into the elevator shaft, falling a distance
of twenty feet, badly crushing the bones of his right
foot and injuring his back.  For two or three years
this door to the elevator had been in such condition
that it could be opened from the outside without the
use of a key.  The door was so worn or sagged upon

its track that by taking hold of the door and lifting up slightly, the latch would slip out of its notch, allowing the door to be opened. Anyone could thus open this door to the elevator. As plaintiff says:

"They could raise the door, if they knew it. It had been done and taken away from me."

The plaintiff had called the attention of the manager of the building, Mr. A. P. Armstrong, to this condition of the door, and Mr. Armstrong had in turn called the attention of the owner, Mr. Tilford, to such condition, but nothing was ever done to remedy the defect. A head-stop, such as a top-screw or angle-iron, placed above the door in the frame, so as to prevent the door from being raised up when closed, would secure it from being opened by meddlers and the elevator from being "stolen." If the elevator door could not have been opened from the outside without the use of a key, the meddler could not have "stolen" the elevator, and plaintiff would not have stepped into space, when he supposed he was stepping into the elevator. His day's work was not yet done. He must mop the halls on all the floors and carry out the waste paper from the different rooms, and he would use the elevator for this work. His purpose was to take Mohammed to the fifth floor and then proceed with his work on the different floors, using the elevator in the work. These were his usual duties which occupied his time on school nights until 10 o'clock P. M. or later.                AFFIRMED.

For appellants there was a brief over the names of *Mr. P. G. McWhinney* and *Mr. C. A. Sheppard,* with an oral argument by *Mr. McWhinney.*

For respondent there was a brief over the names of *Messrs. Boothe & Richardson* and *Mr. F. M. Saxton,* with oral arguments by *Mr. J. F. Boothe* and *Mr. Saxton.*

BEAN, J.—1, 2. The motion for a nonsuit and one for a directed verdict raise the same question. It is contended by counsel for defendants that at the time of the injury plaintiff was acting outside of the scope of his employment and that defendants' request should have been granted. This is claimed on account of the fact that immediately before the accident plaintiff went across the street to mail his letter. The jury could reasonably conclude from the testimony that, although Poole was acting for himself in going to mail a letter, when he returned and took up his duties he was engaged in the furtherance of his master's business, incident to his employment: *Malloy* v. *Marshall-Wells Hdw. Co.,* 90 Or. 303, 305 (173 Pac. 267, 175 Pac. 659, 176 Pac. 589); *Stool* v. *Southern Pac. Co.,* 88 Or. 350 (172 Pac. 101).

There was evidence adduced indicating that plaintiff in pursuing his regular duties descended in the elevator to the basement and extinguished the lights and brought the elevator back to the first floor. After mailing his letter he proceeded with his usual employment for the purpose of taking a passenger to the fifth floor of the building, and doing his janitor work, scrubbing the halls, and taking the paper out of the rooms. The defendants had neglected to install the "head-stop." The plaintiff was projected into a concrete pit, to his permanent injury.

Plaintiff deposed thus:

"Q. Were your duties completed at the time for the day? Did you have other work?

"A. No, they wasn't completed; I hadn't did any work in the hall. I always mop the hall on every floor and take the paper out, after I did the hauling. I used the elevator for that purpose.

"Q. You would go from one floor to another with the elevator

"A. Certainly."

This question was properly submitted to the jury by that part of the charge reading:

"I further instruct you that if you find from the evidence in this case that plaintiff was on an errand for himself at the time he went to post a letter, and that he undertook to use said elevator in coming down to the main floor, and in coming up to the main floor for some purpose of his own, then he was acting outside the scope of his employment and your verdict should be for the defendants. * *

"If you believe he used the elevator to carry on his work as janitor and for the purpose of furthering his master's business, then the court will say to you as a matter of law, that he was engaged in his master's business, and would not be precluded from recovering on that account."

Defendants complain of the latter part of the charge quoted, contending there was no evidence from which to conclude that the plaintiff was using the elevator at the time to carry on his master's business. If the jury believed the plaintiff's story, they could fairly conclude that at the time of the injury Poole was proceeding with his regular work for defendants. This was for the determination of the jury. There being competent evidence supporting their finding in this respect, the question cannot be re-examined by this court. There was no error in denying the motions and submitting the case to the jury.

3. Error is predicated upon the court's refusing to allow C. E. Heft, a witness for the plaintiff, to answer the following question upon cross-examination:

"Now, it is a fact, isn't it, that there is not an elevator in town that you can't get in from the outside?"

The Employers' Liability Act, Section 6785, Or. L., requires all shafts, well, floor opening, and similar places of danger, to be closed, and that all persons having charge of, or responsible for, any work involving a risk or danger to employees or to the public shall use every device, care and precaution which is practical to use, for the protection and safety of life and limb, limited only by the necessity of preserving efficiency, without regard to cost. Ordinary care, or that precaution used by others will not suffice to satisfy the mandate of the statute: *Camenzind* v. *Freeland Furniture Co.*, 89 Or. 158, 173 (174 Pac. 139). There was no error in excluding the proffered testimony.

4. Defendants assert error for the reason that the court charged the jury under the Employers' Liability Act, and refused to instruct under the common law in regard to assumption of risk. The complaint clearly comes within the provisions of the Employers' Liability Act, and the testimony supports the complaint. Therefore there was no error committed in charging the jury according to the statute and refusing to allow the jury to consider assumption of risk as a defense: *Schulte* v. *Pacific Paper Co.*, 67 Or. 334 (135 Pac. 527, 136 Pac. 5); *Oberlin* v. *Oregon-Wash. R. & N. Co.*, 71 Or. 177 (142 Pac. 554); *Davis* v. *Carlton Lumber Co.*, 77 Or. 441, 444 (151 Pac. 650); *Gunnell* v. *Van Emon Elevator Co.*, 81 Or. 408, 414 (159 Pac. 971); *Tabor* v. *Coin Machine Mfg. Co.*, 85 Or. 194, 196 (166 Pac. 529); *Nelson* v. *Brown & Mc-*

*Cabe,* 81 Or. 472, 475 (159 Pac. 1163); *Marks* v. *Columbia County Lumber Co.,* 77 Or. 22, 28 (149 Pac. 1041, Ann. Cas. 1917A, 306).

5. Error is predicated upon the ruling of the court in admitting the testimony of A. P. Armstrong as to plaintiff calling his attention to the dangerous condition of the elevator doors during the time that Armstrong was manager of the Tilford Building. This testimony was followed by other testimony showing that Armstrong conveyed this information concerning the elevator doors to Mr. Tilford, one of the defendants. The purpose was to show the actual knowledge of the defective condition of these elevator doors for more than a year prior to the injury. Armstrong, as manager of the Tilford Building, was the agent of the owners at the time he received this notice and conveyed the same to his principals, and the fact that at a later date he ceased to be the agent of the defendants would not affect the materiality of his testimony. There was no error in admitting the testimony.

6. Complaint is made that the court gave an erroneous instruction, in that it stated that if the jury found from the evidence that a head-stop was practicable to be used, and that it would not limit the efficiency of the operation, then the court would say as a matter of law that it was the statutory duty of the defendants to furnish such an appliance. It is urged that the instruction leaves out the element of safety. In another part of the charge the court informed the jury that:

"If you find at the time of his alleged injuries that he was engaged in carrying on his master's business, and that at said time was engaged in work involving risk and danger, then you are instructed as a matter

99 Or.—38

of law, that it was incumbent upon the defendants to use every device, care, and precaution, which was practicable to use, for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine, or other apparatus or device, and without regard to additional cost of suitable material, safety appliances or devices.''

Taking the instruction with the other part of the charge, there could have been no misunderstanding on the part of the jury as to the practicability or necessity of the device mentioned.

7, 8. It is maintained on the part of defendants that the defective door was not the proximate cause of the injury, but that the injury was due to the removal of the elevator from the first floor.

In *Lane* v. *Atlantic Works,* 111 Mass. 136, we read as follows:

''In actions of this description the defendant is liable for the natural and probable consequences of his negligent act or omission. The injury must be the direct result of the misconduct charged; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended.

''The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise.''

21 Am. & Eng. Ency. of Law (2 ed.), 491, paragraph b, reads:

''An act or omission may yet be negligent and of a nature to charge a defendant with liability, al-

though no injuries would have been sustained, but for some intervening cause, if the occurrence of the latter might have been anticipated.''

See 1 Shearman & Redfield on Law of Negligence (6 ed.), Section 34; also, *Colorado Mortgage Co.* v. *Rees,* 21 Colo. 435 (42 Pac. 42).

The question whether the accident was the direct result of the neglect of the defendants to repair the elevator door was properly submitted to the jury. It was for that tribunal to determine from the evidence in this case whether the injury was the reasonably probable consequence which was to be anticipated on account of the negligence of the defendants. If an independent cause intervene between the negligence of the defendants and the injury, and such intervening cause and its consequences are such as, in the natural course of events, should have been anticipated or foreseen, then the defendants are liable. It was for the jury to say, from the facts and circumstances of the case, whether the defendants could have anticipated or foreseen that persons would naturally tamper with the elevator, if the door were left in a condition to be easily opened, and thereby arrange a dangerous trap for the operator: 1 Thompson's Com. on Law of Negligence, § 62; Watson, Damages for Personal Injuries, § 58; *Colorado Co.* v. *Giacomini,* 55 Colo. 540 (136 Pac. 1039, L. R. A. 1915B, 364).

The case was fairly tried and passed upon by the jury. There was competent evidence to support the verdict. Finding no error in the record, the judgment of the Circuit Court is affirmed.    AFFIRMED.

JOHNS, BROWN and HARRIS, JJ., concur.