Motion to dismiss denied January 27, argued October 13, affirmed November 17, 1925.

## CLIFFORD VOSHALL v. NORTHERN PACIFIC TERMINAL CO.

### (240 Pac. 891.)

**Master and Servant — Evidence That Employee was Injured by Use of Poisonous Brass Polish Held for Jury.**

1. Evidence that employee was injured by using poisonous brass polish furnished by employer *held* for jury.

**Master and Servant — Plaintiff to Take Case to Jury Required to Show Proximate Cause of Injury.**

2. In action by employee for negligent injury from use of poisonous brass polish, plaintiff to take case to jury was required to offer evidence tending to show that defendant knew or ought to have known poisonous character of polish; that it should reasonably have anticipated some injury from its use; that it failed to warn employee of dangers; and that injuries were proximate result of defendant's breach of duty.

**Master and Servant—Jury Might Reasonably Infer Defendant Knew Danger of Solution Prepared for Use in Business.**

3. In action for negligence from poisonous character of brass polish, used by employee, the jury might reasonably have inferred, from evidence of poisonous and dangerous character of the polish, that defendant knew or ought to have known the dangerous properties of the solution prepared by it for use in its business.

**Negligence—Proximate Cause of Injury Question for Jury.**

4. In action for negligent injury, where it is claimed that defendant's act was not proximate cause of injury because result could not reasonably have been foreseen, it is ordinarily a question for jury.

**Master and Servant—Employer Presumed Familiar With Dangers of Business.**

5. An employer is presumed to be familiar with the dangers, latent as well as patent, ordinarily accompanying the business in which he is engaged.

**Master and Servant—Employer's Duty to Warn Employee of Dangers in Use of Poisonous Brass Polish.**

6. Where employer gave employee, an inexperienced, aged, common laborer, a poisonous brass polish whose chemical properties employer was presumed to know or ought to have known, employee had right to assume that employer would furnish reasonably safe appliances for work and would warn him of latent dangers, and it was employer's duty to warn employee of danger involved.

**Negligence—Test of "Proximate Cause" of Injury, Stated.**

7. To constitute proximate cause it is not essential that precise injury resulting from negligence should have been foreseen, the true test being would ordinary prudence have suggested to negligent party that act or omission would probably result in some kind of injury.

**Master and Servant—Proximate Cause Held for Jury.**

8. In employee's action for injuries from employer's furnishing poisonous brass polish, without warning of its dangerous character, whether defendant knew or should have anticipated that plaintiff would suffer some injury as result of its alleged negligence *held* for jury.

3. See 18 R. C. L. 549.
4. See 22 R. C. L. 148.
6. Duty of master to warn and instruct servant engaged in dangerous work, see notes in 1 Am. St. Rep. 28, 548; 19 Ann. Cas. 1154.
7. Proximate and remote causes of injury from negligence, see notes in 50 Am. Rep. 569; 36 Am. St. Rep. 807. See, also, 22 R. C. L. 110.

Trial—Requested Instruction to Find for Defendant if Polish was Only Poisonous When Drunk Properly Refused, Where No Evidence That Anyone Had Drunk It.

9. In employee's action for negligent injury from use of poisonous polish, requested instruction to find for defendant if polish was only poisonous when drunk, where there was no evidence that polish had ever been drunk by anyone, presented an abstract proposition and was properly refused.

Appeal and Error, 4 C. J., p. 764, n. 68, p. 765, n. 93.
Master and Servant, 26 Cyc., p. 1146, n. 93, p. 1166, n. 97, p. 1169, n. 17, p. 1182, n. 68, p. 1216, n. 66, p. 1411, n. 54, p. 1416, n. 75, p. 1417, n. 76, p. 1443, n. 81, p. 1460, n. 32, p. 1461, n. 33, p. 1492, n. 85.
Negligence, 29 Cyc., p. 488, n. 29, p. 495, n. 64, 66, p. 587, n. 64, p. 590, n. 82, p. 597, n. 42, p. 600, n. 56, p. 639, n. 4, 7.
Trial, 38 Cyc., p. 1618, n. 36, p. 1619, n. 38, p. 1711, n. 19.

From Multnomah: Robert Tucker, Judge.

Department 2.

This is an action to recover damages for personal injuries alleged to have been sustained by plaintiff while engaged as an employee of defendant in polishing brass trimmings in Pullman and observation cars. In brief plaintiff alleges that for such work defendant manufactured and furnished him a certain mixture consisting of the following ingredients: Oxalic acid, tripoli, wood alcohol and turpentine; that defendant knew, or ought to have known, that this preparation was poisonous and dangerous to use in such manner, but failed to warn him of its poisonous nature; that he did not know of the danger to which he was exposed, and, as a result of his use of the polish, under the direction of defendant, was poisoned. He alleges that while using it he inhaled the poisonous fumes and dust thereof and absorbed its poisonous substances through his fingers so that his blood system became infected and his heart permanently injured. Defendant is also charged with negligence in failing to furnish plaintiff a mask or

other appliance to protect himself from inhaling poisonous fumes and dust while engaged in his work. Defendant admits that plaintiff was thus employed and that it furnished him a certain preparation to be used in polishing brass, but otherwise generally denies the allegations of the complaint. On the issues stated, the cause was submitted to a jury and a verdict returned in favor of plaintiff for $2,500. Defendant appeals, assigning as error the denial of its motions for nonsuit and directed verdict and the refusal of the court to give certain requested instructions.

AFFIRMED.

For appellant there was a brief over the name of *Mr. Charles C. Hindman,* with oral arguments by *Mr. Samuel B. Weinstein* and *Mr. W. P. LaRoche.*

For respondent there was a brief over the name of *Mr. William P. Lord,* with an oral argument by *Mr. Frank C. Hanly.*

BELT, J.—A review of the ruling of the trial court in refusing to take the case from the jury involves a consideration of the question as to whether there is any evidence tending to show that the alleged negligence of the defendant was the proximate cause of plaintiff's injuries. Defendant, in support of the motions above stated, among other things, contended: (1) There was no proof of any negligence on its part; (2) no proof that the defendant knew of the dangerous character of the brass polish; and (3) no proof that the brass polish, assuming it to be poisonous, was the proximate cause of plaintiff's injuries.

1. Let us examine the evidence in the light most favorable to plaintiff's cause, for such is the rule, and

then determine whether we can say as a matter of law that defendant was not guilty of negligence as charged or that, if negligent, such negligence was not the direct, natural and proximate cause of plaintiff's injuries. Plaintiff commenced work about July 7, 1922, and continued polishing brass with the mixture furnished by defendant until the following October, when he became sick and was compelled to remain in bed for a period of five weeks. He attributed his illness at this time to the fumes inhaled from the brass polish and to poison absorbed through his fingers. He first wore rubber gloves in applying the polish, but later used a wooden paddle, the end of which was wrapped with cloth. The liquid mixture was applied to metal trimmings, and then permitted to dry. When the metal was polished, plaintiff says, "It [referring to the polish] would naturally come off and just fly around in kind of a dust form * * and settle on anything it would happen to hit." He was told by the foreman when he began work to get rubber gloves, "for it is hard on your hands," but this was the only warning, if, indeed, such it may be called, that was given him as to danger in using this polish. When plaintiff partially recovered from his sickness, he was put to work sweeping and cleaning cars, as he objected to working with the brass polish any longer. He carried on his work intermittently until July, 1923, when he became, as he says, totally disabled from doing any kind of manual labor. During this latter period other employees used this same kind of polish in the cars where plaintiff was working and he complains about inhaling its fumes. In describing its effect upon him plaintiff says that it caused a severe burning sensation in his throat and about his lungs. He says he became short of breath

and experienced constant smothering "spells," and was unable to walk any distance on account thereof. In describing the effect of this polish upon his hands plaintiff said, "Well, sir, when I got it under my finger-nails it just looked like that you had run a sliver in there and would keep on working down, made the ends of your fingers so sore that it was almost impossible to button up clothes when they come unbuttoned, or you had to button them." Expert medical witnesses called by plaintiff testified, in substance, that oxalic acid in solution is volatile and that its fumes have a particularly depressant effect upon the heart; that it is an irritant and when inhaled affects the lungs, throat and bronchial tubes. Dr. Brazee, in response to a hypothetical question, testified that in his opinion the use of this brass polish produced the injuries of which plaintiff complains. There is ample evidence that oxalic acid is classified by medical authorities and generally known as an industrial poison. It has been so listed by the United States Bureau of Labor since 1886. We conclude there is evidence tending to establish that plaintiff was injured by using a poisonous brass polish mixture as alleged.

We are next concerned with the more serious question as to whether defendant was remiss in its duty to warn plaintiff fully of the dangers incident to the employment in which he was engaged. Counsel for appellant, in an able brief, urge that defendant could not reasonably have anticipated that plaintiff would be thus injured, and therefore was not obliged to warn him of a danger of which it did not know nor could have known through the exercise of reasonable diligence. In support of this contention defendant asserts that fourteen of its employees used this polish

for periods of two months to eight years, under similar conditions, and plaintiff's case is the only instance in which injury is said to have been sustained. The injuries of plaintiff are unusual in the light of medical authorities—in fact, the testimony of experts given discloses no other identical case of injury resulting from the use of such mixture. Under such circumstances can it be said that there was a breach of duty on the part of the defendant?

2. It is fundamental that to be actionable negligence must be the proximate cause of the alleged injury. The mere happening of an accident in itself is no evidence of negligence. For plaintiff to prevail it was therefore necessary to establish the negligence charged in one or more particulars, and that such negligence was the direct, natural and proximate cause of his injuries. Otherwise stated, plaintiff, in order to take the case to the jury, was required to offer testimony tending to show that defendant knew, or ought to have known, that the mixture in question was poisonous; that it should reasonably have anticipated some injury likely to have resulted from the use of the same as directed; that it failed to warn him of the dangers incident to its use; and that the injuries of which complaint is made were the proximate result of defendant's breach of duty.

3–5. We have shown there was evidence of the poisonous and dangerous character of the brass polish. It follows that the jury might reasonably have inferred that defendant knew, or ought to have known, the dangerous properties of the solution which it prepared for use in its business. Where it is claimed that the defendant's act was not the proximate cause of the injury because the result could not reasonably have been foreseen, it is ordinarily a ques-

tion for the jury: 22 R. C. L. 150.   As stated by this court in *Palmer* v. *Portland Ry., L. & P. Co.,* 56 Or. 262 (108 Pac. 211), "Where the proximate cause of the injury is problematical * * the case should be submitted to the jury."   Also, see *Miami Quarry Co.* v. *Seaborg Packing Co.,* 103 Or. 362 (204 Pac. 492). An employer is presumed to be familiar with the dangers, latent as well as patent, ordinarily accompanying the business in which he is engaged: *Kingan & Co.* v. *Foster,* 53 Ind. App. 511 (102 N. E. 103); *Wagner* v. *Jayne Chemical Co.,* 147 Pa. 475 (23 Atl. 772, 30 Am. St. Rep. 745); *Thompson* v. *United Laboratories Co.,* 221 Mass. 276 (108 N. E. 1042); Labatt's Master & Servant (2 ed.), § 1029; *Louisville & N. R. Co.* v. *Wright,* 183 Ky. 634 (210 S. W. 187, 4 A. L. R. 478).   In *Adams* v. *Grand Rapids Refrigerator Co.,* 160 Mich. 590 (125 N. W. 724, 136 Am. St. Rep. 454, 19 Ann. Cas. 1152, 27 L. R. A. (N. S.) 953), an employee was injured during the process of manufacturing enamel for refrigerators.   It was contended there, as here, that the defendant did not know of the danger involved and could not reasonably foresee that its employee would be thus injured.   The court said:

"The question is whether this scientific fact was one of which the defendants should have had knowledge, and should have made the plaintiff acquainted with.   The case presents an entirely different question from that in *Siegel* v. *United Elec. Heating Co.,* 143 Mich. 484 (106 N. W. 1127), in which it appeared that an explosion occurred from a volatile solvent drawn off from a varnish purchased by the defendant for use in its business.   It was held in that case that the defendant was not negligent unless it knew, or should have known, of the danger to which plaintiff's employment exposed him.   In answering the question, does the testimony warrant the inference

that the defendant should have known it? the court said: 'In determining this question, it should be borne in mind that defendant did not manufacture this varnish. Defendant purchased the varnish for the purpose of using it to gild radiators.' This was clearly an important fact in the case, as the well-recognized obligation of the defendant in such circumstances would be to use reasonable caution in purchasing of a reputable dealer. In the present case, however, the defendant was employing in its business substances and processes of which some one must have had or should have had some scientific knowledge. That an obligation rests upon an employer to acquaint an employee with the dangers which can be ascertained by a knowledge of scientific principles and to which he would be in his ignorance otherwise subjected is a recognizable doctrine of law.''

6. Plaintiff, an inexperienced man sixty-one years of age and a common laborer, had no knowledge whatever of the ingredients of the mixture he was using or that it contained poisonous matter. In the absence of notice to the contrary, he had the right to assume that his employer would furnish him reasonably safe appliances with which to carry on his work. He also had the right to believe that he would be warned of latent dangers incident to his service: *Fox* v. *Peninsular White Lead & Color Works*, 84 Mich. 682 (48 N. W. 203); *Wiseman* v. *Carter White Lead Co.*, 100 Neb. 584 (160 N. W. 985). Since there is evidence of the poisonous and dangerous character of the brass polish, and it is presumed that defendant knew, or ought to have known, the nature and chemical properties of the thing it manufactured, it follows that it owed plaintiff a duty to warn him fully of the danger involved.

7. Assuming there was evidence to go to the jury as to defendant's alleged negligence, we are next con-

fronted with the question, Was such negligence the proximate cause of plaintiff's injuries? The difficulty is not in stating the law of proximate cause, but lies in applying the law stated to the facts of a case. There are loose expressions by this and other courts that the test of whether an injury is the proximate result of a negligent act or omission is determined by whether the result could have been reasonably foreseen. This general statement of the law is often misleading as applied to the facts of a particular case. *Louisville & N. R. Co.* v. *Wright, supra.* It is not essential to constitute proximate cause that the precise injury which resulted from the master's negligence should have been foreseen: *Miami Quarry Co.* v. *Seaborg Packing Co., supra; Collins* v. *Pecos & N. T. Ry. Co.,* 110 Tex. 577 (212 S. W. 479, 222 S. W. 156); *Sandell* v. *State,* 115 S. C. 168 (104 S. E. 567, 13 A. L. R. 1268). It is sufficient if injury in some form should reasonably have been anticipated. As stated in *Thompson* v. *United Laboratories Co., supra:*

"It is not necessary that the person to be harmed or the form which the injury shall assume should have been foreseen. 'It is enough that it now appears to have been a natural and probable consequence.'"

A negligently runs over B by automobile and injures him. Tuberculosis of the bone results. Can A shield himself from liability by saying that he could not reasonably foresee that such injury would result? We think not. If there were no intervening agency "insulating the negligence," A is liable even though the resulting injury is unusual and unexpected. As held in *Hease* v. *Morton & Morton,* 138 Iowa, 205 (115 N. W. 921, 16 Ann. Cas. 350):

"The consequences of negligence need not be foreseen. It is enough to constitute negligence if the result of the act is the natural, though not the necessary or inevitable thing to be expected. If ordinary prudence would suggest that the act or omission would probably result in injury, it is sufficient to support the charge of negligence."

The test, after all, is, would ordinary prudence have suggested to the person sought to be charged with negligence that his act or omission would probably result in some kind of an injury? 22 R. C. L. 126.

Appellant relies strongly on *Pinkley* v. *Chicago & E. I. R. Co.*, 246 Ill. 370 (92 N. E. 896, 35 L. R. A. (N. S.) 679), and while it may be distinguished in some particulars from the case at bar, it fairly supports the theory of defendant. In that case plaintiff was removing piling, recently treated with creosote, from railroad cars. It was an extremely hot day, and the fumes from the preparation with which the piling was covered caused a burning sensation and the skin on his arms and hands to blister and peel off. Eczema and certain internal injuries finally resulted. The court held, three members dissenting, that no recovery could be had since "plaintiff knew that such injuries were likely to follow from handling the piling"; that the danger was obvious to plaintiff; hence no duty rested upon the employer to warn him; and that the injuries sustained could not reasonably have been anticipated by the one charged with negligence. It was held as a matter of law that the internal injuries sustained were not the proximate result of a neglect to warn of danger because there was no proof that such injuries might have been foreseen as a natural consequence of a failure to warn. As stated by the court in *Louisville & N. R. Co.* v. *Wright, supra*, we are unable to agree to such a conclusion.

It is, indeed, a harsh doctrine to hold as a matter of law that such dangers were obvious to a common laborer who possessed no scientific knowledge of the chemical properties or effect of the preparation in question. The Pinkley case apparently overlooks the rule that it is not essential to recovery that the person charged with negligence should have anticipated the precise injury. At any rate, there is no evidence, nor is it contended in the instant case, that plaintiff knew or had reason to believe that he would be thus injured.

In *Canfield* v. *Iowa Sep. Co.*, 172 Iowa, 164 (154 N. W. 434), cited by appellant, the court said:

"There is no allegation in the petition that the defendant knew, or by the exercise of reasonable care should have known, that there was any poisonous substance upon these cones when they were delivered to the plaintiff. * * There is no claim that the defendant knew and failed to notify the plaintiff of any danger attending the handling of these cones in the condition in which they came to the plaintiff. The plaintiff does not base any claim upon any failure on the part of the defendant to warn him of danger or to instruct him as to the proper handling of these cones."

It is thus apparent that this case is not in point. *Gould* v. *Slater Woolen Co.*, 147 Mass. 315 (17 N. E. 531), has no application for the reason that the relationship of master and servant did not exist. *Corcoran* v. *Wanamaker*, 185 Pa. 496 (39 Atl. 1108), seems in point, but there is such a meager statement of the facts in the opinion that its effect as an authority is uncertain.

8. We are convinced that whether defendant knew, or ought reasonably to have anticipated, that plaintiff would sustain some injury as a result of its alleged

negligence, was a question of fact for the jury to decide.

9. Error is predicated on failure to give the following requested instruction:

"If you should find that the brass polish used by plaintiff was only poisonous when it was drunk by some person, and was not poisonous by the inhalation of the fumes and dust thereof, or by absorbing same through the fingers while being used as a brass polish, and therefore did not cause any injury to plaintiff as alleged in his complaint, then your verdict should be for the defendant."

There is no evidence that this particular mixture had ever been drunk by any person. The instruction covered an abstract proposition, and therefore it was not error to reject it.

We have carefully examined other requested instructions and are of opinion that so far as applicable to the issues they were covered in the general charge. The court fairly submitted the cause to the jury and by its verdict we must abide. The judgment is affirmed.                    Affirmed.

Coshow, Bean and Brown, JJ., concur.