Argued September 25, modified November 6, 1952

SHELTON *v.* LOWELL ET AL. and LOS ANGELES-
SEATTLE MOTOR EXPRESS, INC.

249 P. 2d 958

432

*Clarence J. Young* of Portland argued the cause for appellants. On the brief were Koerner, Young, McColloch & Dezendorf, of Portland, and John Gordon Gearin and William D. Campbell, both of Portland.

*Paul E. Geddes,* of Roseburg, argued the cause for respondent. With him on the brief was Carl M. Felker, of Roseburg.

Before Brand, Chief Justice, and Rossman, Lusk, Latourette and Tooze, Justices.

LATOURETTE, J.

Plaintiff Shelton brought action against the defendants, Frank V. Lowell and Dorothy M. Lowell, dba Klamath Packing Co. (hereinafter referred to as "Klamath company"), and Preston LeRoy Lavoy, their driver, and Los Angeles-Seattle Motor Express, Inc. (hereinafter referred to as "Los Angeles Express"), a Washington corporation, and Earl S. Hamlett and Ellsworth O'Donnell, its drivers, to recover damages for personal injuries resulting from a motor vehicle collision.between plaintiff's and Klamath company's vehicles on the Pacific highway a few miles north of the city of Drain and a few feet southerly of the stalled Los Angeles Express truck. The jury returned a verdict in favor of plaintiff against the defendants, Los Angeles Express, Hamlett and O'Donnell, the operators of the truck, in the sum of $65,000, general damages, and $2,031.45, special damages, and exculpated the other defendants. Judgment was entered on the verdict, and the defendants against whom the judgment was entered appeal.

Briefly the facts follow: on January 11, 1950, the 60-foot Los Angeles Express truck and trailer was proceeding northerly over the said highway when at about 2 p.m., because of a broken oil line, its truck became disabled and stopped upon a highway, occupying practically all of the easterly lane of such highway.

The collision occurred in the following manner: plaintiff was proceeding in his Chevrolet automobile in a southerly direction on his right-hand side of the road. Defendant Klamath company's Ford truck and trailer was proceeding northerly in the lane occupied by, and southeasterly of, the stalled Los Angeles Express truck. After plaintiff's car had passed the

stalled truck and trailer some six or eight feet, the Klamath company's truck and trailer came over into the westerly lane occupied by the plaintiff's car and struck it, forcing plaintiff's car up into the bank and seriously injuring plaintiff.

After the judgment was entered against the Los Angeles Express and its drivers, they moved for a judgment notwithstanding the verdict or, in the alternative, for an order setting aside the judgment and granting a new trial. The motions were denied by the trial court. On the appeal, error is predicated on the action of the trial court in the above respect and in the giving of, and failure to give, certain instructions.

The first assignment of error is that the court erred in denying appellants' motion for a directed verdict and for judgment notwithstanding the verdict. The grounds for the assignment of error follow: (1) that there was failure of proof to establish any negligence on the part of the defendants, or that any alleged negligence was the proximate cause of the accident; (2) that the plaintiff himself was guilty of contributory negligence, and (3) that the sole, proximate cause of the accident was the active motion of the two other vehicles, either singly or jointly.

In approaching the question of whether or not appellants were entitled to a directed verdict or for a judgment notwithstanding the verdict, we must keep in mind that plaintiff is entitled to the benefit of every reasonable inference which may be drawn from the evidence, and, where the evidence is in conflict, the court may not concern itself with the facts since they are exclusively for the determination of the jury.

The complaint contains several specifications of alleged negligence, and, if plaintiff has sustained any of them, the case was ripe for the jury; therefore, it

will be unnecessary for us to consider all of the allegations at this time.

It is alleged that the defendants failed to place red flags, flares, reflectors or other devices not less than 100 feet or more than 300 feet to the front and rear of said parked truck. The evidence is conflicting on this point, there being testimony in the record that no such warnings were exhibited at all to the rear of the parked truck so as to give warning to oncoming traffic. Chapter 276, Oregon Laws, 1947, requires that red flags be exhibited as alleged when a motor truck becomes disabled during the daytime, and, if defendants failed to comply with such law, they would be guilty of negligence per se. This was a jury question.

It is next alleged that the defendants parked their truck on the highway without leaving at least 16 feet of unobstructed width so as to enable two cars to pass each other while proceeding in opposite directions. It is secondly alleged that said defendants failed to move their truck to a point of safety off the main-traveled portion of the highway but permitted the same to remain thereon. It is thirdly alleged that defendants permitted their equipment to remain on the highway so that the same could not be seen by oncoming traffic for a reasonable distance because of curves in said highway to the north and south of said equipment. As these specifications of negligence are closely connected, we will consider them together.

Section 115-353, OCLA, among other things, prohibits any person from leaving standing his vehicle on the main-traveled portion of the highway when it is practicable to leave his vehicle standing off of the traveled highway. In no event is he permitted to leave his vehicle standing on the highway unless a clear and unobstructed width of not less than 16 feet opposite

such standing vehicle is left for free passage of other vehicles. It is conceded that defendants' truck did not leave the required width of 16 feet for free passage of other vehicles on the highway. The defendants plead, however, that they are exonerated by a further provision of the above section which is here quoted:

> "The provisions of this section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position, * * * ."

They further state that the law is settled in Oregon that a vehicle disabled to such an extent that it cannot be moved under its own power (as with the case of appellants' truck) is not amenable to that portion of the statute requiring a 16-foot clearance. We disagree with this statement.

The Oregon cases cited by appellants, other than *Frame v. Arrow Towing Service,* 155 Or 522, 64 P2d 1312, were based on an early statute which is entirely different from the statute as now written. The factual situation in the Frame case differs quite materially from that of the present case. In that case, the Menefee car was totally disabled so that it could not move under its own power, and a towing car was promptly sent for. The judgment, however, was in favor of Menefee and against the Arrow Towing Service, which appealed, and the court held that it was error to instruct the jury on an abstract proposition of law tending to confuse the jury.

*Morris v. Fitzwater,* 187 Or 191, 210 P2d 104, was evidently overlooked by counsel because it was held in that case that a disabled automobile is one that

cannot *safely* be moved under its own power. In that case, the lights upon the automobile became extinguished.

■■ We are not aware of any Oregon case where the foregoing exculpatory statute has been considered in a situation where the stalled vehicle could have been moved by means other than under its own power; at least, none has been called to our attention. In construing the statute, we must give to it a practical and common-sense meaning and try to ascertain the intent of the legislature. The obvious meaning of that section of the statute relied upon is that where the car is temporarily disabled so that it is impossible to avoid temporarily leaving such vehicle on the highway, the driver of the stalled car is relieved from responsibility. Where an emergency is created either by failure of power, lights, locked brakes, tire trouble, etc., the disabled car is not permitted to remain on the highway for a protracted length of time when there is a reasonable opportunity to remove it, and, in the exercise of reasonable care, it could have been removed. In construing a statute similar to ours, the Iowa Supreme Court, in *Boger v. Kellner,* 239 Iowa 1189, 33 NW2d 369, 370, had this to say:

"When the car stopped it was, of course, disabled. Code Section 321.355 provides the preceding section shall not apply when a car is so disabled it is impossible to avoid stopping and temporarily leaving it in such position. The word 'impossible' as used in this statute should be given a practical construction. * * * A literal construction would almost nullify the statute. The word may be construed to mean 'not reasonably practicable.' * * * The word 'temporarily' indicates the statute contemplates the removal of the disabled vehicle with all reasonable expediency."

In the instant case, the evidence discloses that the defendants' truck remained on the traveled portion of the highway, occupying practically the entire width of the north-bound east lane thereof for over two-and-one-half hours while one of the drivers went to Eugene, some 40 miles distant, to obtain fuel and a new fuel line. It further appears that at the time the truck was stalled another truck belonging to the same company came up behind it. The drivers of the latter truck, noting the disability of the stalled truck, could have moved the disabled equipment, according to Mr. Hamlett, whose testimony follows:

"Q. Did you consider the possibility of unhooking the one trailer on your equipment, and having the other truck tow it off to the side of the road or someplace, or shoulder someplace where you could get off?

"A. No, sir.

"Q. Why didn't you do that?

"A. Well, I don't think that it is possible to pull the truck the way the highway was and in my estimation it would have been illegal anyway.

"Q. Just a minute. I didn't say pull the truck. I said unhook the trailer and have the other tractor pull if off to a place of safety and then come back and get your truck and haul it to a place of safety. Could the equipment there do it?

"A. Yes, sir."

The question of negligence of the Los Angeles Express and its drivers in leaving their stalled equipment on the highway then resolves itself into one of fact for the jury.

The next question presented is whether or not such negligence was a proximate cause of the collision between the other two vehicles.

 It is axiomatic that what is the proximate cause of an accident is generally a question of fact to be determined by the jury and not by the court. Where, however, the facts are undisputed and are susceptible of but one inference, then the question becomes a legal one for the court. The evidence shows that the accident occurred during daylight hours, the stalled truck being in the middle of a straightaway approximately 300 feet from curves in the road to the north and south. A curve sign was posted at the entrance to each curve. The pavement was "slippery", "slushy", and "wet", and one witness said "icy." There was snow on the shoulders and the weather was cloudy. No warnings were placed to the rear of the truck in compliance with the law. The Klamath company's truck and trailer came around the curve at a speed of from 40 to 55 miles per hour, and, according to the driver of the Klamath company's truck, he saw the defendants' truck as he rounded the curve at a distance of from 275 to 300 feet. He testified that he traveled approximately 60 feet before he noticed that the truck was stationary, and he then applied the brakes. His vehicle started to slide and he released the brakes to give the trailer a chance to straighten out. As soon as it did so, he put on his brake lever again, and by that time saw the flagman at the truck. He continued with his brake lever down until he got within 30 feet of the truck when he applied his foot brake which caused his truck to jackknife across the yellow line into plaintiff's lane of travel. Plaintiff by this time had proceeded to a point approximately eight feet southerly of the stalled truck. We have here a situation that when the driver of the Klamath company's truck first saw that the defendants' truck was stalled on the highway he did every-

thing reasonably possible to stop his vehicle, as the jury so found in its verdict.

■ As to the law of proximate cause, we advert to our decision in *Salmi v. Columbia & N. R. R. Co.*, 75 Or 200, 204, 146 P 819, wherein we embraced the foreseeability rule, saying:

"Human emotions and other mental states naturally have a powerful influence upon human action and are factors which cannot be left out of the account. They must be reckoned as part of the necessary sequence of intermediate causes. It is a basic principle that, if the cause set in motion by the defendants operates continuously and directly upon another agency which as a necessary consequence affects a still different force by which injury is inflicted, the author of the initial cause is responsible for the final result. The difficulty lies in the application of this fundamental doctrine. The authorities are apparently in hopeless conflict on this question, but it is believed that proper discrimination will reconcile them in this manner. If, under all the circumstances in the exercise of ordinary care, a person can discern that his act will naturally and probably result in harm of some kind to another, but not necessarily foreseen as to the exact form of injury, the former is liable in damages for the ensuing casualty. On the contrary, if no harmful result can reasonably be expected, or if there is no natural connection between the act of the defendant and the injury alleged, no action will lie."

See *Mollencop v. City of Salem*, 139 Or 137, 8 P2d 783; *Voshall v. Northern Pac. Terminal Co.*, 116 Or 237, 240 P 891; *Miami Quarry Co. v. Seaborg Packing Co.*, 103 Or 362, 204 P 492; *Poole v. Tilford*, 99 Or 585, 195 P 1114.

The question is: could the defendants have foreseen in the exercise of ordinary care that their act in

leaving the truck on the highway without a warning flag being placed 300 feet to the south or at the curve of the highway would naturally and probably result in harm of some kind to another? We believe that in view of the circumstances of this case, including the flagman's signals, the close proximity of the stalled truck to the curve, the icy condition of the pavement, and the down grade of the highway, the question of whether or not, in the exercise of ordinary care, the defendants could have foreseen that their act in leaving the truck on the highway would naturally and probably result in harm of some kind to another, was for the jury and not for the court.

 It is next contended that plaintiff himself is guilty of negligence which contributed to the accident in that he failed to slow down or stop his car in the face of obvious danger. Ordinarily, contributory negligence is a question for the jury, and rarely will a court interfere unless it can say that the contributory negligence is clear, conclusive and unequivocal. It is well-settled that, even though a defendant is guilty of negligence which proximately causes an accident, plaintiff cannot recover if he was negligent, which negligence contributed in the slightest degree to the accident. There is a further rule of law that, if it appears from the evidence offered by plaintiff, he was guilty of negligence without which the accident would not have happened, such proof as a matter of law will bar recovery. See *Flatman v. Lulay Brothers,* 175 Or 495, 154 P2d 535; *Johnson v. Underwood et al,* 102 Or 680, 203 P 879. Conversely, even though plaintiff were guilty of negligence and the accident would have happened in any event, recovery will not be barred.

Plaintiff's evidence in this regard is that in approaching the stalled truck from the north he noticed

it in the easterly lane of the highway when he was about 600 feet away. At that time he was going about 40 miles per hour. As he approached, he saw O'Donnell, one of the truck drivers, standing by it with a flag. Upon observing this, plaintiff decreased his speed to about 20 miles per hour, and, when he was from 50 to 100 feet north of the truck, O'Donnell signaled him to proceed by the truck. He then increased his speed to from 22 to 28 miles per hour. When he was within ten feet from the front end of the stalled truck, he noticed the Klamath company's truck coming around the curve some 300 feet south thereof at a speed of approximately 55 miles per hour, and then, at a distance of from 150 to 225 feet from the rear of the Los Angeles equipment, it started to "hump" and slide, with the trailer portion of the truck coming down plaintiff's side of the road in an "L" shape, until at a point from 30 to 50 feet south of the stalled truck, the entire Klamath equipment came over onto plaintiff's side of the road, striking plaintiff's car some ten feet south of the defendants' stalled truck, all of which plaintiff continuously observed.

It is contended by defendants that, since plaintiff by his own testimony continuously observed the Klamath company's truck's movements, he should have applied his brakes, either slowing down or stopping his car under the cirumstances, since he had ample opportunity to do so, and that his failure to so conduct himself was negligence as a matter of law. At first blush there might appear some merit in defendants' contention; however, as we will hereinafter point out, when plaintiff observed the Klamath company's truck jackknifing he had proceded in his lane to a point approximately opposite the middle of the stalled truck and trailer. On one side of him was the defendants'

large truck and trailer, and on the other side was a ditch and wooded bank; the pavement was slippery and the shoulder slushy with snow. Had plaintiff tried to stop his car under the existing conditions, he might have gone under the truck, off the pavement or slid crosswise into the eastbound lane in front of the approaching vehicle. However that may be, assuming but not deciding, as a matter of law, that plaintiff should have applied his brakes, we are of the opinion that had he done so the accident in all probability would have happened anyway. At least, it was a jury question.

The length of the stalled truck and trailer was 60 feet, and this, added to the 10-foot distance from the front of the truck when plaintiff noticed the Klamath company's vehicle and the 10-foot distance from the south end of the truck where the collision happened, would aggregate approximately 80 feet, so that while the Klamath company's truck was traveling from the curve to the point where it came over into plaintiff's lane, a distance of an average of 100 feet, and traveling approximately twice as fast as plaintiff's vehicle, plaintiff must have proceeded, when he first noticed the Klamath company's truck's deflection to his side of the road, to a point on the highway approximately opposite the middle of the truck and trailer, leaving around 30 feet southerly to the south end of the stalled equipment. Plaintiff testified that he could have stopped within 35 feet upon application of his brakes (it is not disclosed whether he meant on a dry pavement or on the one traveled at that time) and had he done so, upon observing the movement of the Klamath company's truck in his lane, he would have been placed ahead of the rear end of the stalled truck and trailer at least five feet and in all probability could have been struck in that event by the oncoming Klamath com-

pany's truck and trailer. Whether he would have been struck by the oncoming vehicle, had he applied his brakes, presented a question of fact for the jury.

It is one thing, in the quiet confines of a courtroom, to talk about estimates of distances and speeds and what one should have done under the circumstances, and quite another thing to evalue the same at the time the events actually occurred. The jury viewed the scene of the accident, and it was in a much better position than we to evaluate the testimony. We are not unmindful that appellants have cited authorities from other jurisdictions on this question. We have considered them and find that the facts and circumstances in those cases were different from those in the instant case. Each case must be decided on its own peculiar set of facts. The question of contributory negligence was for the jury because the evidence was not so clear that only one reasonable inference could be drawn therefrom.

For a very comprehensive discussion of negligence, proximate cause and contributory negligence, see the recent opinion of this court, speaking through Mr. Justice ROSSMAN, in *Birks v. East Side Transfer Co.*, 194 Or 7, 241 P2d 120, a case which somewhat parallels the present case and wherein a verdict against the owner of the parked truck was permitted to stand.

The trial court did not err in submitting this question to the jury.

There are 15 other assignments of error which deal with the court's failure to give certain requested instructions of defendants and the giving of certain other instructions by the court. We have selected for discussion Assignments of Error Nos. VII and XV, which, in our opinion, are meritorious, the others not being well-grounded.

■ Assignment of Error No. VII deals with the failure of the court to grant defendants' requested instruction that the following allegation of negligence plead by plaintiff in his complaint be taken from the jury:

"Said defendants failed and neglected to give warning to the plaintiff of the approach from the opposite direction of the vehicle of the defendants, Frank V. Lowell and Dorothy M. Lowell, and failed to give warning to the defendants Frank V. Lowell, Dorothy M. Lowell and Preston LeRoy Lavoy of the approach of the vehicle of the plaintiff."

The court not only failed to take such allegation from the jury but instructed on the same. There was no duty on defendants' part to warn plaintiff of the presence of the oncoming Klamath company's vehicle because plaintiff admitted that he saw the approaching car for a distance of approximately 300 feet, and that he was constantly cognizant of its presence on the the highway. All the evidence on the subject was that the driver of the Klamath company's vehicle saw plaintiff's oncoming car for a distance of several hundred feet, and that O'Donnell, one of the drivers of the stalled truck, gave noticeable warning of the approach of plaintiff's car by flagwaving and shouting. There could be no negligence in failing to give warning of that which was obvious to the respective parties. The court, therefore, erred in failing to remove from the jury the above allegation of negligence.

■ In regard to Assignment of Error No. XV, we quote the following from defendants' brief:

"The trial court erred in giving the following instruction:

" 'If you find from the evidence that the accident occurred on the west side of the center

line of the Pacific Highway in the lane of traffic being used and traveled by the plaintiff, Shelton, then before the plaintiff can be charged with contributory negligence because of lack of control, it must appear that the tractor and trailer of the defendant Klamath Packing Co., that is, Lowell and Lavoy, entered upon the path of plaintiff's automobile at a sufficient distance from said automobile to permit its being stopped or otherwise maneuvered so as to avoid the accident.'

"Objection was made to the giving of this instruction in the following language:

" '* * * upon the ground that it was the plaintiff's duty to slow down; that the duty of the plaintiff to slow down or stop, depending upon whether the plaintiff saw or ought to have seen the approaching truck was out of control— that it wouldn't be necessary that the plaintiff actually see the approaching truck pass the center line; that the plaintiff could be on notice that there was danger of this approaching truck at a later time crossing the center line by reason of the excessive speed at which it was traveling, the humping of the equipment as it was coming down on its own side or for any other reason which might have caused it to pass over onto the wrong side of the road.' "

Defendants allege in their answer that plaintiff was negligent in that, "He failed to have his said automobile under proper or any control so as to slow down, stop, swerve or avoid the approaching truck of Klamath Packing Company."

The vice of the above instructions is that the lack of control was limited to the time when the Klamath company's tractor and trailer entered plaintiff's lane of travel. Plaintiff was bounden to keep his car under such control as would be kept by a reasonably prudent

person under like or similar circumstances, and this was a continuing duty. See *Prauss v. Adamski,* 195 Or 1, 244 P2d 598. There were many circumstances in the case, such as the speed of the oncoming Klamath company's vehicle, the humping of its truck, the trailer's coming over into plaintiff's lane of travel some distance up the road, the time when plaintiff first saw the truck and trailer coming around the curve, the icy condition of the highway, the stalled Los Angeles Express truck and trailer, and other circumstances unnecessary to mention. The court erred in the giving of the above instruction.

 Since we have before us the entire record of the proceedings in the lower court, and there being error in the case, we are of the opinion that we should invoke amended Article VII, § 3, of the state constitution, and dispose of the case in this court, trying the same on appeal as a suit in equity. *Martin v. Oregon Stages, Inc.,* 129 Or 435, 277 P 291; *Hoag v. Washington-Oregon Corp.,* 75 Or 588, 144 P 574, 147 P 756. See also the opinion of Mr. Justice BAILEY in *Johnson v. Ladd,* 144 Or 268, 280, 14 P2d 280, 24 P2d 17. From the record we are of the opinion that defendants were guilty of negligence in leaving their stalled truck and trailer on the highway for an unreasonable length of time and not placing a warning signal at the turn of the road south of its truck, and that such negligence contributed to the accident. As to the contributory negligence of plaintiff, we do not believe that the defendants have established such negligence by a preponderance of the evidence, the burden of proof being upon them to so establish. Nor do we think that from the record we can say that plaintiff was guilty of contributory negligence as a matter of fact.

We must next decide the extent of plaintiff's in-

juries and assess such sum as will fully compensate him for the same.

Plaintiff was 44 years of age at the time of the accident and, together with his partner, owned a saw-mill and logging operation. Plaintiff had pursued construction and logging operations most of his life and was accustomed to hard manual labor, and at the time of the accident was in excellent health.

As a result of the accident, he suffered compound fractures of the lower left leg and of the right arm, and fractures of the transverse processes of the lower spine, pelvic and right heel bones. He has fairly recovered from all of these fractures except the arm and heel bone fractures, the heel bone fracture leaving the most severe disability. The bone has not knit in the arm fracture, and it will be necessary to effect a bone graft to ameliorate this condition.

The heel disability, as indicated, is the most pronounced. It has healed but the bone is dished downward. It has a rough, irregular joint surface so that pain is produced when plaintiff walks upon irregular ground. The condition is permanent but might be bettered by an operation which would effectuate a solid joint but would leave a stiffness of the joint. According to the medical testimony, it would take about six months to improve this situation if an operation were performed, but plaintiff would never be able to carry on his accustomed occupation as a logger or do hard manual labor.

Plaintiff, in his complaint, alleged the various injuries which he received as a result of the accident and stated, "and the same have and permanently will make it impossible for him to follow his usual occupation as a logger and will otherwise impair his earning

ability, all to plaintiff's general damage in the sum of $75,000.''

The evidence shows that prior to the accident plaintiff was drawing a salary from his business of $500 per month, and, since the accident, this has been increased to $700 per month.

The jury allowed plaintiff $65,000, general damages, and $2,031.45, special damages. In view of plaintiff's increased earning capacity, his earning ability was not entirely impaired. Under the mortality table, of which we take judicial notice, plaintiff has a life expectancy of upwards of 25 years. It cannot reasonably be assumed that he would continue to earn his present salary over that period of time. We could safely say, however, that in the course of ordinary events it would extend over a period of ten years, amounting to $24,000. Deducting this from the $65,000 allowed by the jury would leave $41,000, which we assess as general damages, in addition to the $2,031.45 as special damages. It is so ordered.

ROSSMAN and LUSK, J.J., dissent.

ROSSMAN, J., dissenting.

The assignments of error, which the majority finds possess merit, demand, I believe, that the challenged judgment should be reversed and that the cause should be remanded to the circuit court for retrial. I do not believe that this case is within the purview of Article VII, § 3, Constitution of Oregon. I dissent, not only from the parts of the decision which employ that section of our constitution, but also from the other parts which deem that this court can perform the same function as a jury.

LUSK, J., dissenting.

I agree with the court that prejudicial error was committed on the trial, but I cannot concur in the disposition which the court makes of the case. I do not suggest at this time a re-examination of the doctrine of *Hoag v. Washington-Oregon Corp.*, 75 Or 588, 144 P 574, 147 P 756, and the cases which follow it, that this court is authorized under Art VII, § 3 of the constitution, in certain circumstances to re-examine the evidence in a law action that has been tried by a jury and to enter judgment based upon such re-examination. But the power so asserted, if it is to stand, should be exercised only with utmost caution and in rare instances. That authority has been held to be granted by the following provision of Art VII, § 3:

"* * * or if, in any respect, the judgment appealed from should be changed, and the Supreme Court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the Supreme Court".

When the power is invoked in a personal injury case it imposes on an appellate court the task of determining, upon conflicting evidence and on a type-written record, questions of negligence, contributory negligence, proximate cause and damages. Here, vital issues of fact are in dispute which the court undertakes to resolve without having seen the witnesses or observed their demeanor on the witness stand, and without a view of the premises which customarily is afforded the jury in cases of this kind — as indeed occurred in the present case. We do not even have the aid of the rule in equity cases under which we give weight to the findings of the trial judge on conflicting evidence. The question of plaintiff's contributory neg-

ligence in this case is, to my mind, exceedingly close. I agree that it was a question for the jury, but, if I were to attempt to determine it *as a question of fact,* as the court has done, I should be much inclined to hold against the plaintiff on that issue. But I do not feel that I am in a position to determine it at all, and I do not believe that this is a case in which this court can advisedly say that "it can determine what judgment should have been entered in the court below". I would remand the case for a new trial.