Jessie C. Haase v. Morton & Morton, Wm. M. Morton
and L. B. Morton, Appellants.

**Negligence.** Liability on the ground of negligence does not depend
1  on ability to foresee the consequences of an act or omission; it
is sufficient if the result is the natural, though not necessary
or inevitable thing, to be expected.

**Same:** CONCURRENT NEGLIGENCE.  A surgeon who assists in removing
2  his patient upon whom he has operated from the operating room
to her private room in a hospital, although not in actual charge
of her at that particular time, is held to an exercise of reasonable
care for her safety, which is a fact question in the instant case:
and he is not relieved of the consequences of his own negligent
act because of the negligence of his assistant.  ·

**Negligence of partner:** LIABILITY OF FIRM.  Each partner is the agent
3  of the firm while engaged in the partnership business, and the
firm is liable for the negligence of each committed within the
scope of the agency; so that where one member of a firm of
physicians made all arrangements for operating upon a patient at
a hospital, both participated in the operation, and the jury was
justified in finding that as a part of the employment the firm
was to care for the patient during her stay, any negligence of one
member while assisting in removing her from the operating room
is chargeable to both, even though neither of the physicians owned
or controlled the hospital.

**Special findings.**  Special interrogatories calling for a determination
4  of the question of whether the result of a negligent act might
have been reasonably foreseen, or which call for a finding on the
one material question in the case, should be refused.
     Weaver, J., dissenting.

*Appeal from Hardin District Court* — Hon. J. H. Richard,
Judge.

Friday, April 10, 1908.

Suit to recover damages for a personal injury.   There

was a verdict and judgment for the plaintiff. The defend-
ants appeal.— *Affirmed.*

*F. M. Williams, Albrook & Lundy,* and *Nagle & Nagle,*
for appellants.

· *Sager & Sweet* and *J. H. Scales,* for appellee.

SHERWIN, J.— The defendants, Wm. M. Morton and
L. B. Morton, are physicians practicing their profession un-
der the firm name of Morton & Morton in Iowa Falls and
vicinity. Early in January, 1905, Dr. W. M. Morton, the
senior member of the firm, was called to the plaintiff's home
in Iowa Falls for the purpose of treating the plaintiff pro-
fessionally. He made a thorough examination of her con-
dition, and determined that a surgical operation was neces-
sary. He also suggested that it would be safer and more
convenient to perform the operation at the hospital located
near the plaintiff's home, and undertook to and did make the
necessary arrangements for performing it there. Soon
thereafter the plaintiff was taken to the hospital by Dr. W.
M. Morton. She was given a room where she dressed for
the operating table, and was then taken to the operating
room in the story above by one of the attendants who was
fitting herself for a nurse. The plaintiff was then laid on
the operating table, and the defendant Dr. L. B. Morton
administered the anæsthetic, and the defendant Dr. Wm. M.
Morton performed the operation. · After the operation, the
plaintiff was taken from the operating table and placed on
a car or stretcher for the purpose of taking her to her room
on the floor below. Both of the defendants assisted in plac-
ing her on the car. The car was about six feet long and
had six rubber-tired wheels, two large wheels in the center,
and two smaller ones at each end. When either set of end
wheels was resting on the floor, the car inclined in that direc-
tion. After the plaintiff had been placed on the car, Dr.

Wm. M. Morton left the operating room for the surgeon's dressing room, and Dr. L. B. Morton and Miss Klein, the nurse who had shown the plaintiff to the operating room, rolled the car into the elevator room for the purpose of taking it to the room below on the elevator, the doctor being in front of the car and the nurse behind it. When they reached the elevator room, they found the elevator door wide open and the elevator below. The elevator room was only six or seven feet square, and the car on which the plaintiff rested was stopped with the front end thereof resting on the wheels and only a foot from the elevator door. After the car had been stopped, Dr. L. B. Morton left it, and stepped to the side of the elevator shaft for the purpose of bringing the elevator to their floor. The machinery did not at once respond to his efforts, whereupon Miss Klein, the nurse, told the defendant that she would go and call the janitor. She then left the car, and, after she had gotten some seven or eight feet therefrom, the defendant said to her, " Never mind, I can get it from here." When Miss Klein turned to go back into the elevator room, the car was just rolling into the elevator shaft. She reached it, but too late to save the plaintiff, who was still unconscious, and they were both precipitated to the floor below some fifteen feet. For injuries received in the fall, the plaintiff brings this suit.

At the close of the evidence the defendants moved for a directed verdict, and the motion was overruled. It is now urged that the evidence is not sufficient to support a verdict against either of the defendants, and that the court erred in denying the motion. It is said that the accident was not one which the defendant L. B. Morton ought reasonably to have foreseen might occur as the result of his act, and that a mere failure to guard against an accident which could not reasonably have been expected is not negligence. The evidence tends to show, however, that the defendant L. B. Morton had, before this particular time, assisted in operations at the same hospital, and had also assisted in removing the

patients operated upon from the operating room by means of the same cart and elevator. It must therefore be presumed that he was familiar with the size and construction of the cart used in the present instance and with the conditions surrounding the elevator and elevator room. It is shown that the peculiar construction of the car, the end wheels being lower than the center ones, made it very easy to start. The floor in the elevator was cement, and the wheels of the car were equipped with rubber tires, making a combination well calculated to overcome friction. The elevator door was wide open when the car was stopped by the defendant L. B. Morton with its front end within a foot of the elevator shaft. The plaintiff was at the time unconscious, and hence wholly unable to look out for herself or appreciate the danger of her position. Notwithstanding these dangerous conditions, the defendant not only left the car himself, but, after being advised by Miss Klein that she had also left it, he paid no attention to it, and a slight movement of the plaintiff started it toward the open shaft.

The appellants' position on this branch of the case is unsound for two reasons. In the first place, it may well be said that just such a result might reasonably be expected to follow the leaving of such a vehicle in so dangerous a place. Indeed, it seems to us that an accident might almost be expected to follow as a matter of course. The car was easily started, and even unconscious persons not infrequently use their physical power; therefore a reasonably careful person would guard against these conditions singly or combined. In the second place, negligence does not depend upon the question whether the result of an act might reasonably have been foreseen.

The consequence of negligence need not be foreseen. It is enough to constitute negligence if the result of the act is the natural, though not the necessary or inevitable, thing to be expected. If ordinary prudence would suggest that the act or omission would prob-

1. NEGLIGENCE.

ably result in injury, it is sufficient to support the charge of negligence. *Burk v. Creamery Pkg. Co.,* 126 Iowa, 730; *Osborne v. Van Dyke,* 113 Iowa, 557; *Watters v. Waterloo,* 126 Iowa, 199; *Fishburn v. Ry. Co.,* 127 Iowa, 483.

It is conceded that the defendants were not responsible for the negligence of Miss Klein, and the appellants contend that the act of Dr. L. B. Morton in leaving the car for the purpose of raising the elevator was not the proximate cause of the accident. Dr. Morton was one of the persons in charge of the plaintiff at the time in question. He had undertaken to assist in removing her to her room, if he was not in fact in charge of her at that particular time, and he was therefore legally bound to exercise reasonable care in her removal. Whether he exercised such care after he knew that Miss Klein had left the car was clearly a question of fact for the jury. If it be said they were both negligent, it does not relieve the defendant, for it is the rule that the mere fact that some other cause operates with the negligence charged does not relieve from liability. *Rice v. Whitley,* 115 Iowa, 750; *Schnee v. City of Dubuque,* 122 Iowa, 459; *Van Camp v. Keokuk,* 130 Iowa, 716.

2. SAME: concurrent negligence.

II. The appellant Wm. M. Morton denies liability on the ground that whatever liability exists must rest on the act of his partner L. B. Morton while he was assisting in the removal of the plaintiff from the operating room to her own room, and insists that the removal to her private room was not within the scope of the ordinary business of the firm. We are unable to agree with this contention, however. The defendants were partners in the general practice, and the partnership, acting through Dr. Wm. M. Morton, undertook to perform the operation and did in fact perform it. It was Dr. Wm. M. Morton who advised plaintiff to go to the hospital where she could be much better taken care of than at her home. He made all of the arrangements at the hospital for the plaintiff,

3. NEGLIGENCE OF PARTNER: liability of firm.

and took her there in his own carriage. When she arrived there she was shown to a private room, and, acting under the direction of the defendants, she there prepared herself for the operating table. She went from there to the operating room where the anæsthetic was administered by Dr. Lewis Morton and in the presence of Dr. Wm. Morton and several persons connected with the hospital. After the operation was performed, and while she was still unconscious, she was removed from the operating table to the cart by Dr. Lewis Morton and one or more of the hospital attendants, and the doctor and Miss Klein undertook to convey her from the operating room to her room on the floor below by means of the elevator. While the evidence tends to show that Miss Klein had been at the hospital about ten months when the accident occurred, and that she had assisted in the kind of work which was being performed when plaintiff was injured, many times, the record also shows that she had never theretofore been up or down the elevator with a patient without the attendance of a physician. It also appeared that if the janitor of the building was present he operated the elevator, but, if he were not there, the doctor operated it just as defendant Lewis Morton attempted to do when plaintiff was injured. It is very clear that plaintiff could not be left in the operating room during the period necessary for her recovery, and it was the duty of some one to see that she was safely removed therefrom and placed in a room suitable for such further treatment as her case might require. While it is shown that neither of the defendants owned or controlled the hospital, it does appear that they made all arrangements for plaintiff's stay there, and a jury would be justified in finding that defendants as part of their employment undertook to care for plaintiff from the time she entered the hospital until she was ready for discharge therefrom. And while this might not ordinarily include the work of the hospital employés, the doctors might assume the duty of returning the patient to his room, and in such event each member of the firm would

be the agent of the other in carrying on the work.    It is fundamental that each partner is the agent of the firm while engaged in the prosecution of the partnership business, and that the firm is liable for the torts of each, if committed within the scope of the agency.    22 Am. & Eng. Ency. Law, 168; *Champlin v. Laytin,* 18 Wend. (N. Y.), 407, (31 Am. Dec. 382).    The trial court gave an instruction which embodied correct law on this subject and it was for the jury to say whether Lewis Morton was acting for the firm when the accident occurred.    It surely should not be said as matter of law in all cases that after a serious surgical operation and while the patient is still unconscious, the physician may leave the patient on the operating table to find his way to his own room the best he may.    Furthermore, the evidence shows that in this hospital the doctors accompanied their patients up and down the elevator.

III.    Error is predicated on the court's refusal to submit to the jury special interrogatories, the substance of which required a determination as to whether it was reasonable to 4. SPECIAL FINDINGS. expect that plaintiff would be precipitated down the elevator shaft.    Under the rule of the cases heretofore cited the questions were improper and were rightly refused.    But if proper in other respects, they called for a special finding on the one material question in the case, and were for that reason rightly refused.    *Home Ins. Co. v. Northwestern P. Co.,* 32 Iowa, 223; *Lewis v. C., M. & St. P. R. Co.,* 57 Iowa, 127; *White v. Adams,* 77 Iowa, 295.

IV.    Instructions 2, 3, and 4 asked by the defendants were properly refused because they embodied the same principle we hold unsound in the first division of this opinion.

V.    Practically all of the instructions given are complained of, but we find no reversible error therein.

The judgment should be, and it is, *affirmed.*

WEAVER, J. (dissenting).— I am not able to concur in

the foregoing opinion. The net result of the holding there expressed is to greatly increase and enlarge the liability, already sufficiently burdensome, of the medical profession. It may be admitted that the defendants advised plaintiff to go to the hospital and in her behalf arranged with the hospital managers for her reception, but I am unaware of any rule of law by which such acts upon their part rendered them chargeable with the negligence of the hospital managers or their servants. There is no pretense that defendants had any connection with or control over the hospital or the attendants there employed except as practicing physicians who went there to treat their patients. The matter of service, nursing, watch, care, and personal attendance and assistance were peculiarly the duties assumed by the hospital, and the physicians were charged with no more responsibility or liability with respect thereto than would have been the case had plaintiff been in her own home and surrounded by her own family and servants. There was nothing in the peculiar offices or duties of their profession requiring defendants or either of them to assume the responsibility of carrying or wheeling the patient between her room and the operating room — though if her condition was such as to require it, it might have been their duty to accompany her to administer proper restoratives, or give advice for her care and treatment en route. The hospital managers recognizing this situation did furnish an attendant who handled the car on which plaintiff was being moved, and it is conceded in argument that for the negligence of that attendant the defendants are not liable. The operation for which defendants had been employed had been performed, and the attendant took charge of the car to remove the patient to her room. One of the defendants, Dr. L. B. Morton, walking ahead of the car, discovered that the elevator platform was down, and addressed his efforts to raising it. While the doctor was thus engaged, his head and shoulders being inside the elevator well, the hospital attendant having charge of the car let go her hold

upon it, and it moved forward sufficiently to allow plaintiff to slide therefrom into the well, falling to the platform which was then ascending, though not, as I understand the record, the full distance to the lower floor. It is true the attendant says in explanation of her negligence that, seeing the doctor was having some difficulty in raising the elevator platform, she spoke to him saying she would go below and raise it. To this he, having then succeeded in getting the platform in motion, responded, saying it was unnecesary for her to go, and before he had brought the platform to their floor the accident occurred. To charge him with this unfortunate result — and to go still further and charge the partnership of which he was a member — strikes me as a grievous injustice not called for by any rule or principle of law. Suppose, in wheeling the car along the hall, the nurse had carelessly tipped it over, precipitating the plaintiff upon the floor, or had carelessly fallen upon or against the plaintiff, or had of her own motion administered a medicine or restorative in excessive or dangerous quantity, is there any principle upon which defendants could be held liable for injuries thus occasioned? I think it safe to say that this question will be unhesitatingly answered in the negative, and yet it will be very difficult indeed to suggest any tenable ground for distinguishing between the relations and liabilities of the parties in these supposed cases and the case at bar. I freely concede that one who adopts a profession which has to do with matters affecting the health and lives of those whom he serves is properly held to a high degree of responsibility, and is required to exercise care reasonably proportioned to the delicacy and importance of the duties he undertakes to perform. While there are doubtless occasional exceptions, it is a matter of common observation that the medical profession of to-day is keenly alive to its responsibility. No profession excels it in thoroughness of preparation. The true physician never ceases to be a student, never flags in zeal for more thorough mastery of the mysterious

laws of human life and human health.   In entering the practice he assumes grave risks.   Both law and public sentiment demand of him a skill which adequately reflects the accumulated experience of the profession since the day of Hippocrates, and the breadth of scientific knowledge which is characteristic of the present age.   Though he does all a man can do and gives to a case the best fruits of a life of earnest study and investigation, he cannot escape carping criticism, and the sick or injured person who is disappointed by his physician's inability to perform a miracle is easily persuaded to find solace in a malpractice suit, in which a sympathetic jury stimulated by the sight of a wasted or crippled human form is led to put a brand of undeserved reproach on one who merits the entire confidence and respect of the community.   Every physician who answers an emergency call, even though it be one of the numerous " charity cases " which daily demand much of his time and attention, takes his professional life and reputation in his hand, and when having vainly exhausted all the resources at his command, some person inspired by ignorance or malice or hope of blackmail holds him up with a damage claim, he ordinarily finds it to his advantage to submit to unjust exaction rather than risk the uncertain outcome of such controversies in a court of justice.   This court while not relaxing the rule which insists that men holding themselves out as physicians shall exercise the care and skill befitting the profession, ought not to unduly increase the burdens of that profession or make its practice so onerous and hazardous as to drive therefrom its reputable members; yet I feel warranted in saying that such result cannot be avoided if the legal liability of the physician is to be extended materially beyond the limits which have been recognized and established in our earlier adjudications on this subject.

I dissent, also, from the conclusion that, if Dr. L. B. Morton is chargeable with negligence, his partner, Dr. W. M. Morton, is equally liable with him.   Even if we assume that

the former was wheeling the car at the time of the accident, though it is conceded he was not, he was engaged not in the business of the partnership, but was voluntarily doing or assisting in the work of a hospital attendant. His partner was not present, took no part in the service being performed at that time, and should be exonerated from all liability. The judgment appealed from should be reversed.