## SAN ANTONIO & A. P. RY. CO. v. BIGGS. (No. 8724.) *

(Court of Civil Appeals of Texas. Galveston. Feb. 18, 1926. On Motion for Rehearing April 5, 1926.)

1. **Master and servant** ⟜150(2) — Railroad held not liable for failure to warn car repairer that coated nails were more apt to fly than uncoated nails.

Railroad *held* not liable for failure to warn car repairer, who lost eye using coated nails, that they were more apt to fly when struck with hammer than uncoated nails, though repairer did not know that they were coated or would so fly, unless some such accident could have been reasonably anticipated.

2. **Master and servant** ⟜107(6) — Railroad held not negligent in not providing sufficient light for car repairer working in open shed at 2 p. m. on bright day.

Railroad *held* not negligent for failure to provide sufficient light for car repairer, where he was injured while working in southeast corner of shed, covering of which was 15 feet from ground at eaves, at 2 p. m. on bright day; south end and part of east side of shed being open.

3. **Evidence** ⟜588 — Testimony that object 2½ feet high would cast shadow on side of railroad car 10 feet away at 2 p. m. on July 13th held to have no probative force.

Testimony that object 2½ feet high would cast shadow on side of railroad car 10 feet away at 2 p. m. on July 13th *held* to have no probative force, since it would be physically impossible.

4. **Appeal and error** ⟜1003—Finding of jury will be set aside if based on testimony which cannot be true upon any reasonable hypothesis, considering circumstances and uncontroverted physical facts.

Finding of jury will be set aside if based on testimony which cannot be true upon any reasonable hypothesis, considering circumstances and uncontroverted physical facts.

5. **Appeal and error** ⟜1062(1)—Where four acts of negligence alleged, but two of them were not shown to have been proximate cause of employee's injury, it was prejudicial error to submit special issue of proximate cause as to all acts of negligence.

Where four acts of employer were alleged as negligence, but two of them were not shown to have been proximate cause of employee's injury, it was prejudicial error for court to submit special issue on proximate cause so as to call for but one answer as to all acts of negligence.

### On Motion for Rehearing.

6. **Master and servant** ⟜152—Railroad company held not guilty of negligence in furnishing coated nails to experienced car repairer, without warning him that they were coated and more apt to fly than uncoated nails.

Railroad company *held* not guilty of negligence in furnishing coated nails, which were commonly used, to experienced car repairer without warning him that they were coated and more apt to fly when struck with hammer than uncoated nails, since it could assume that he knew all about nails he was using.

7. **Master and servant** ⟜158—Railroad negligent in not warning car repairer that nails furnished were more dangerous than ordinary nails is liable for natural and reasonable result of negligence, despite absence of prior accidents.

Railroad, if negligent in not warning car repairer that nails furnished him were more dangerous than ordinary nails, would be liable for any damage thereby caused which was natural and reasonable result of such negligence, regardless of whether like injury had previously resulted from use of such nails.

Appeal from District Court, De Witt County; John M. Green, Judge.

Action by J. A. Biggs against the San Antonio & Aransas Pass Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Baker, Botts, Parker & Garwood, of Houston, Boyle, Ezell & Grover, of San Antonio, Crain & Hartman, of Cuero, and Proctor,

---

Vandenberge, Crain & Mitchell, of Victoria, for appellant.

Durell Miller, of Yoakum, and R. J. Waldeck and H. W. Wallace, both of Cuero, for appellee.

LANE, J. This suit was instituted by appellee, J. A. Biggs, against the appellant, San Antonio & Aransas Pass Railway Company, to recover damages for the loss of his left eye, alleged to have been suffered by him by reason of the negligence of appellant. The negligence alleged was: (1) That appellant, without warning to or knowledge on the part of appellee, furnished and required him to use, in his work in repairing certain freight cars, corrugated or coated nails which were latently defective, in that they had been dipped in or coated with some thin, transparent and not readily perceptible substance which rendered them slick to a hammer stroke, apt to fly out when struck, and dangerous to drive; (2) that plaintiff was required to work in a place that was unsafe by reason of poor and insufficient light, which rendered it difficult to see plainly, and therefore dangerous to him; (3) that defendant failed to provide plaintiff with a movable or adjustable scaffold on which to stand while at work, and required him to work in an unsafe place, to wit, on a fixed rigid platform about 18 inches distant from the side of and about 12 inches lower than the center belt of the car, which necessitated his leaning over the open space between platform and car, and compelled him to assume a stooping position while driving nails into the center belt of the car.

Appellant answered by general demurrer and general denial, and specially pleaded contributory negligence of appellee.

The case was submitted to a jury upon special issues, in answer to which the jury found:

First. That Biggs was injured while in the employ of defendant by being struck in his left eye by a nail which he was driving in the side of a box car belonging to defendant.

Second. That the nail which struck plaintiff in the eye had been coated with or dipped in cement coating, which adhered to it.

Third. That plaintiff did not know at or before the time of his injury that the nail which struck him had been coated with some kind of preparation or cement.

Fourth. That the nails, such as plaintiff was attempting to drive and which struck him in the eye, were more apt to fly off when an attempt was made to drive them than a nail of the same general size and character which had not been so coated.

Fifth. That an employer of ordinary prudence, exercising ordinary care for the safety of his employee, would have reasonably anticipated that in an attempt to drive the nail such as plaintiff was attempting to drive when he was injured, by a person who did not know such nail had been coated, some occurrence of the general nature alleged by the plaintiff would be likely to happen.

Sixth. That the defendant railway company, nor any of its employees, informed the plaintiff that the nails he was using had been coated with the substance above mentioned.

Seventh. That the failure of the defendant to inform the plaintiff that the nails he was using were coated was negligence.

Eighth. That in furnishing the plaintiff the nail which flew off and penetrated his eye the defendant was guilty of an act of negligence.

Ninth. That the defendant was guilty of negligence in furnishing the platform on which the plaintiff was required to work.

Tenth. That the defendant was guilty of negligence in providing such light as was provided by which the plaintiff was to pursue his labors at the time of his injury.

Special issue No. 11 and the answer thereto were as follows:

"Special Issue No. 11.

"If you have answered special issue No. 7 in the affirmative, or special issue No. 8 in the affirmative, or special issue No. 9 in the affirmative, or special issue No. 10 in the affirmative, then you will state whether or not such negligence was the proximate cause of the injury, if any, to the plaintiff, J. A. Biggs." Answer: "Yes."

In answer to special issues Nos. 12 and 13, respectively, the jury found that the plaintiff was not guilty of contributory negligence, and that the damage suffered by him by reason of his injury was $8,000.

Upon the findings of the jury the court rendered judgment for the plaintiff against defendant for the sum of $8,000. The defendant has appealed.

By its first sixteen propositions appellant insists that the court erred in not instructing a verdict in its favor, in that there was neither pleading nor evidence to support a judgment against it.

While we cannot sustain appellant's contention as a whole, we think so much thereof as insists that the evidence offered in support of the allegation that appellant was guilty of an act of negligence in furnishing appellee certain corrugated nails, with which to do his work in repairing its cars, which had been dipped in or coated with some thin transparent substance which rendered them slick to a hammer stroke and more apt to fly and more dangerous than uncoated nails of the same general size when struck to be driven, without warning appellee that such nails were so coated and apt to fly when struck with a hammer, is insufficient to support such allegation should be sustained. It can hardly be seriously contended that appellant was guilty of an act of negligence in furnishing appellee with coated, rust-proof nails with which

it desired to have its cars constructed, though they might fly, to some extent, more than uncoated nails of the same general size, which appellant thought were unsuitable for such construction, without warning to appellee, if appellee knew of such coating and the tendency of the nails to fly at the time he used the same and was injured; it being shown that such nails were largely manufactured by many manufacturers of nails and were in common use in this country for the building and repair of cars. We do not understand that appellee so contends, but we understand that his contention is that the negligence of appellant, of which he complains, is in not warning him of the fact that the nails were coated and more apt to fly than uncoated nails, alleging that he had no knowledge of such facts. Of course, he does not contend that he did not know that all nails when struck by a hammer had more or less tendency to fly, and that the extent to which they would fly depends largely upon the class of the nail and the care with which it was struck; indeed, he admits as much in his testimony, and of course he would not contend that it would be an act of negligence in a builder to furnish his employee with the finishing nails, long slender nails with but little or no head, which are commonly used in finishing work on the inside of a structure, upon the grounds that they had no head, were much more slender than other nails of the same length, and therefore more apt to fly than heavier nails with flat heads; for it is inconceivable that one should be penalized for using nails of the kind best adapted for use in his structure because they had, to some extent, a greater tendency to fly, and by reason thereof the employee using them was injured.

It is shown that the plaintiff was about 45 years of age at the time of his injury; that he had been a car carpenter or repairer by trade or calling for 20 years; that he had been engaged in the service of defendant in repairing cars for about 12 days before his injury, and had been using the same kind of nails as the one which caused his injury for about 1½ days prior to such injury; and that he represented himself to appellant as a competent car repairer.

We here adopt the statement made by appellant as substantially stating the undisputed facts relative to the matters referred to, as follows:

"The nails used by plaintiff at the time of his injury were known as 'light barbed cement-coated car nails,' were regular car nails, and had been continuously used in the San Antonio & Aransas Pass shops for freight car work since during 1918. These nails are manufactured by the American Steel & Wire Company, the Pittsburg Steel Company, the Bethlehem Steel Company, and by practically every wire nail manufacturer in the country, and are bought and sold in the open market in enormous quantities. The coating on the nails is a patented process called 'Pierson's process,' apparently owned by a man named Pierson, the formula being unknown to any of the witnesses. The shank of the nails is a little larger than ordinary fivepenny nails and, the mechanical object of the coating known as 'Pierson's process' is to prevent rust and in conjunction with the barbs to cause the nails to adhere better and remain more firmly fixed in the wood. Some manufacturers take the ordinary galvanized nails and dip them in a patented solution and call them 'coated nails.' Another nail called a 'cooler' is also a coated nail. Coated nails are used in various kinds of construction work."

J. A. Biggs, the plaintiff, testified:

"In picking the nails up they feel rough in rubbing these nails together in your hands (indicating), and then rubbing your fingers they feel sticky. Whatever the substance was on the nails would get my hands dirty or gummy and nasty. A nail is rather a simple device; it is just a sharp pointed piece of steel with a head on it. Any nail that is struck at an angle before it is set sufficiently to hold its course has a tendency to fly out. I know that, and I am an experienced man in driving nails; I have been at it for 20 years. I drove nails around the farm or ranch or house when I was a boy, and I have been driving them ever since, and I have known that tendency of nails from the time I first began driving them as a boy, but you take an experienced carpenter, and he will have nails fly off in any position. A carpenter places himself in his own position. The whole thing as to the way a nail will fly depends first upon whether the nail is properly 'set,' and secondly upon the force and direction of the blow with which it is struck; that is the truth about the matter. * * * I do not mean to tell you that a man on a platform as solid as this floor, and leaning 18 inches away, would, in order to drive a nail 12 inches above the floor or platform, have to put his head down over that nail to drive it. I got the nails I was using out of the San Antonio & Aransas Pass storeroom in the shops where they keep their material and issue it out to the men as they need it. * * * I went to the storeroom on the morning of the day I was injured and called for 30 pounds of eightpenny nails and the man weighed out 30 pounds, and I carried them back to the shop. I perceived a right smart of this coating on the nails they handed me yesterday afternoon— so much so they are sticky—just to handle one nail you could tell it. As to what from my experience as a mechanic in my opinion would be the effect of that amount of resin on a nail, or whatever the substance was, with reference to whether the head of the nail or point of the nail or coating would get slick in attempting to drive it, will say that of course it will corrode a hammer and get a considerable amount on a hammer after a while off of the nail heads when you make the blow. * * * There is so much heat from that lick that it will melt that substance into a fluid which makes it soft and slippery."

The witness Gilland testified:

"If I only drove one or two of them (nails) up and no one called my attention to it, I might

not have noticed it (the coating), but if I drove several of them up I would notice it."

The witness Stopkey testified that during the period of government control of railroad companies they began to use the coated or cemented nails; that he had driven a keg of them in a day; that such nails seem to be greasy; that he had rubbed them in his hands and they would get sticky; that in driving them his hammer would get slick; that while it is a fact that a hammer will get slick from driving all kinds of nails, it gets slick and it slips worse when used in driving these coated nails; that he had seen a carpenter rub the face of his hammer on the ground awhile to avoid its becoming slick; that it would become slick in driving ordinary nails, but more so in driving these coated nails.

E. C. Whitley testified as follows:

"Any nail will fly off if you hit them off center. As regards the general aptitude of nails to fly, and comparing an eightpenny corrugated car nail with an eightpenny wire nail not coated, my honest opinion is that the coated nail has the more tendency to fly when you are attempting to drive it. Anything slippery or sticky would make it fly. I began work up there (Yoakum shops) on July 8, 1923, and continued there until January, 1924. I drove those nails from July, 1923, up until January, 1924, in my work there in those shops. I also drove some of the same character of nails in the Texas & Pacific Railway shops. I drove lots of them there."

C. E. Yinger testified:

"I have been a carpenter; I worked at that trade for 15 years. That nail is treated with a cement coating and is called a 'cement-coated nail.' I have driven some of those nails. We use some in building bridges, and I guess we used a keg or more at our place two years ago in building our lumber shed."

The evidence as a whole, we think, conclusively shows that before appellee's injury occurred he knew that the nails given to him for use were coated and that they were to some extent more apt to fly than ordinary uncoated nails. It was therefore not negligence in defendant not to notify him of a fact which he already knew. It seems to us that as appellee held himself out as an experienced car builder and repairer of 20 years' experience, appellant had the right to assume he was well acquainted with the nails so commonly used in the building and repairing of cars as were the nails furnished him in the present case.

[1] If it be conceded that the coated nails would to some extent, when struck with a hammer, fly more than ordinary nails, and that appellee did not know before he received his injury that they were so coated and would so fly, still appellant would not be liable, as for negligence in not notifying appellee that the nails were coated and would to some extent, when struck, fly more than ordinary nails, unless it can be said that some such accident as occurred could have been reasonably anticipated as a result of the failure to so notify the injured party. Admitting that appellant knew, as any one experienced in driving nails did, that all kinds of nails would often fly when being driven with a hammer, and that the nails like those furnished appellee with which to do his work would, to some extent, fly more than ordinary nails, there is no evidence showing that any such injury as was suffered by appellee, or any other like injury, had theretofore resulted by reason of the use of the nails furnished, though such nails had been in common use by appellant and others in building and repairing cars for many years, and though appellee had used them a day and a half prior to his injury.

In 20 R. C. L. § 3, at page 8, it is said:

"No man is made an insurer of his acts; he is liable only for injuries arising from a failure to act with the degree of foresight and intelligence that characterizes the conduct of prudent men in general. There are many injuries to persons and property for which the law furnishes no redress."

20 R. C. L. § 8, p. 11:

"It is an undeniable philosophic truth—though it has not been very generally observed—that a person's liability for his acts depends upon their tendency under the circumstances known to him"—citing Doyle v. Chicago Ry. Co., 42 N. W. 555, 77 Iowa, 607, 4 L. R. A. 420; Haase v. Morton, 115 N. W. 921, 138 Iowa, 205, 16 Ann. Cas. 350; and many other authorities.

20 R. C. L. § 11, p. 16:

"Negligence consists in a failure to provide against the ordinary occurrences of life, and the fact that the provision made is insufficient as against an event such as may happen once in a lifetime, or perhaps twice in a century, does not make out a case of negligence upon which an action in damages will lie. Said Mr. Justice Holmes, while a judge of the Massachusetts court: 'Knowledge of the dangerous character of a thing is only the equivalent of foresight of the way in which it will act. We admit that if the thing is generally supposed to be universally harmless, and only a specialist would foresee that in a given case it would do damage, a person who did not foresee it and who had no warning would not be held liable for the harm. If men were held answerable for everything they did which was dangerous in fact, they would be held for all their acts from which harm in fact ensued. The use of the thing must be dangerous according to common experience, at least to the extent that there is a manifest and appreciable chance of harm from what is done, in view of either of the actor's knowledge or of his conscious ignorance' "—citing many authorities.

If the foregoing rules stated by the author, which are supported by decisions of several states, are to be followed, it may be well said that mischief which no reasonable person

would have anticipated cannot be taken into account as a basis upon which to predicate a wrong.

It follows from what we have said that we have reached the conclusion that there is no evidence to support the finding of the jury that appellant was guilty of "negligence," as that term was defined by the court, in furnishing the nails in question to appellee without warning him that they would fly, to some extent, when struck with a hammer, more than ordinary nails of the same general size.

[2] We also sustain the contention of appellant that there was no evidence to support the finding of the jury that appellant was guilty of negligence in not providing sufficient light to enable appellee to perform his work with safety to himself. It is shown by the undisputed evidence that at the time appellee was injured, about 2 p. m., July 13, 1923, he was standing on a firm stationary platform about 7 feet from the ground, and was engaged in nailing boards on one side of a freight car which stood under and near the south end and east side of a shed, the cover to which in its center was about 30 feet from the ground and at the eaves about 15 or 18 feet from the ground; this shed was 200 or more feet long and about 150 or 175 feet in width. It is shown that the entire south end of the shed was entirely open and that the east side thereof, extending north for a distance of 60 or 70 feet from the south end, was also open. It is shown that the car on which appellee was working at the time of his injury was standing within 4 or 5 feet of the south end and only a few feet from the east side of the shed; that the car was 36 feet in length; and that appellee was working on it just north of its center. It is shown that the day on which appellee was injured was a bright day; that the platform upon which he was standing to do his work was so constructed that its side nearest the car on which appellee was working stood about 15 or 16 inches therefrom and extended back therefrom about 10 feet; that on its side fartherest from the car certain lumber, from 2 to 2½ feet in height, was piled at one point near where appellee was working; and that a tool box of about the same height also stood near said side of the platform. Photographs, admitted as correctly showing the light as it would fall on a car standing at the point at which the one stood on which appellee was working at the time of injury, were introduced in evidence and are attached to the statement of facts before us, and they show conclusively, we think, that the bright light of day at or about 2 p. m. on the day appellee was injured must have fallen directly upon the very part of the car upon which he was working.

[3] It is true appellee testified that the pile of lumber and tool box, 2 to 2½ feet in height, situated 8 or 10 feet from the side of the car on which he was working, cast a shadow upon the car so as, to some extent, obstruct the light; but we are of opinion that such testimony has no probative force whatever. It was shown, as already stated, that at the time appellee received his injury the sun was about straight above the shed. Of course, the light therefrom entered the shed from above, and such being an undisputed fact, it is simply impossible that objects 2½ feet high, standing 8 or 10 feet from the car, could have cast a shadow upon the side of the car upon which appellee was at work.

[4] It has been well said that while it is the duty of the appellate courts to sustain the findings of a trial court or of a jury founded upon sufficient credible testimony, they are not required to go blind and sustain a finding based upon testimony which is entirely out of harmony with universal observation, reason, and common experience. If the circumstances and uncontroverted physical facts shown are such that the testimony cannot be true upon any reasonable hypothesis, as in this case, a finding of the jury based upon such testimony should be disregarded and set aside.

Believing, as we do, that there is no probative evidence to support the finding of the jury that the defendant required appellee to do his work in a place insufficiently lighted, we sustain appellant's complaint of such finding.

Appellant complains of the finding of the jury that defendant was guilty of negligence in providing the platform on which appellee was required to stand while performing his work, and insists that such finding is so against the great weight and preponderance of the evidence as to be clearly wrong. We think the complaint should be sustained. When the undisputed physical facts, relative to the nature of the platform complained of, its height and distance from the car on which appellee was working at the time of his injury, are taken and considered with the evidence relating to the platform as a whole, we seriously doubt whether there was more than a scintilla of evidence tending to support the finding of the jury complained of with reference to the platform, and hence we sustain appellant's complaint of such finding without discussing the evidence relative thereto, in view of the fact that the judgment must be reversed and a retrial of the cause had upon the issue as to whether appellant was guilty of negligence in providing the platform in question for its employer to stand on while repairing its cars.

[5] We are now brought to a consideration of the complaint of appellant of special issue No. 11 as submitted by the court. This special issue submitted by the court as has already been shown, is as follows:

"If you have answered special issue No. 7 in the affirmative, or special issue No. 8 in the affirmative, or special issue No. 9 in the affirmative, or special issue No. 10 in the affirmative, then you will state whether or not such negligence was the proximate cause of the injury, if any, to the plaintiff, J. A. Biggs."

Appellant made timely objection to the form of special issue No. 11, and here insists that it was entitled to have the question of proximate cause submitted separately to each alleged act of negligence, and that it was prejudicial error for the court to so frame the issue of proximate cause as to make one answer of the jury thereto apply and constitute a finding on the four separate alleged acts of negligence which were submitted to the jury; that from the answer of the jury to special issue No. 11 it cannot be determined which one or more of the acts complained of were found to be the proximate cause of the injury complained of.

We sustain the contention of appellant. It may be, in so far as can be determined from the answer of the jury to the issue, that they found that the furnishing of the nails, without warning of their inclination to fly, was alone the proximate cause of such injury, or that the failure to furnish proper light was alone such proximate cause, and since we have found that there was no evidence to support a finding that either of such alleged acts of negligence was the proximate cause of the injury, we cannot, of course, permit a judgment to stand based upon a finding by the jury that either of such acts alone or together was the proximate cause of the injury.

In Debes v. Greenstone (Tex. Civ. App.) 247 S. W. 289, it was held that where different issues of negligence, one of which could not have constituted the proximate cause of the injury complained of, are grouped as one, and submitted to the jury on the question of proximate cause, and the jury required to answer, "yes" or "no" as to the whole, the most that could be said of an affirmative answer is that it indicates one of the issues submitted was found to be the proximate cause of the injury, and that where an issue not raised by the pleading, as in that case, had been improperly submitted, the court could not say, in order to sustain the judgment, that such submitted improper issue was not the one found in support of the verdict.

The only difference in the submission of the issue of proximate cause in this case and the Debes Case is that in the Debes Case the first part of question No. 11 submitted an issue not raised by the pleadings, whereas in this case question No. 11 submitted issues not raised by the evidence.

For the reasons pointed out, the judgment is reversed and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

PLEASANTS, C. J. [6] In overruling appellee's motion for rehearing, the majority of the court agree with appellee that the statement in our original opinion that "the evidence as a whole, we think, conclusively shows that before appellee's injury occurred he knew that the nails given him for use were coated and that they were to some extent more apt to fly than ordinary uncoated nails," is not justified by the record. The testimony of appellee set out in the opinion might well be construed as an admission by him that he knew the nails he was using were coated with a substance which would make them more apt to fly than ordinary nails; but when his testimony is taken as a whole, we do not think the evidence is conclusive upon this question.

We are, however, of the opinion that considering the undisputed evidence as to the obvious condition of the nails and as to the appellee's long experience as a car repairer, which fact was known to appellant when he entered its service, and the long and general use of these nails, especially in the kind of work in which they were given appellee for use, reasonable minds cannot differ in the conclusion that appellant in the exercise of ordinary care could have assumed that appellee knew all about the kind of nails he was using, and that appellant was not negligent in failing to inform him that the nails were coated and more apt to fly than ordinary nails.

We also think that the following statement in our original opinion is misleading:

"Admitting that appellant knew, as any one experienced in driving nails did, that all kinds of nails would fly when being driven with a hammer, and that the nails like those furnished appellee with which to do his work would, to some extent, fly more than ordinary nails, there is no evidence showing that any such injury as was suffered by appellee, or any other like injury, had theretofore resulted by reason of the use of the nails furnished, though such nails had been in common use by appellant and others in building and repairing cars for many years, and though appellee had used them a day and a half prior to his injury."

[7] If appellant was negligent in not warning appellee that the nails furnished him were more dangerous than ordinary nails, it would be liable to appellee for any damage thereby caused which was the natural and reasonable result of such negligence, regardless of whether the evidence in this case shows that a like injury to that sustained by appellee had previously resulted from the use of these nails. The preceding portion of the paragraph of the opinion from which the above statement is copied correctly states the rule that appellant could only be held liable for such injury and damage as it could reasonably anticipate might result from its failure to warn appellee, but its application is not called for by the facts of this case.