Argued April 22, reversed May 14, 1952

PRAUSS, Administratrix *v.* ADAMSKI

244 P. 2d 598

[ 1 ]

*Sidney Lezak* argued the cause for appellant. On the brief were Lenske, Spiegel, Spiegel, Martindale and Lezak, of Portland.

*Walter J. Cosgrave,* of Portland, argued the cause for respondent. With him on the brief were Maguire, Shields, Morrison and Bailey, of Portland. .

Before BRAND, Chief Justice, and ROSSMAN, LATOURETTE, WARNER and TOOZE, Justices.

TOOZE, J.

This is an action to recover damages for the death of Rose Kudrna, plaintiff's intestate, resulting from the alleged negligent operation of a motor vehicle by defendant Laudie Adamski. The case was tried to a jury, resulting in a verdict and judgment in favor of defendant. Plaintiff appeals.

Plaintiff's brief sets forth 18 assignments of error. Nine of the assignments are directed to the failure and refusal of the trial court to give certain instructions to the jury as requested by plaintiff; five relate to instructions given; three, to evidentiary matters; and the last, to the refusal of the court to grant plaintiff's motion for a new trial. However, most of the assignments of error are separated into groups, the assignments in each group involving substantially the same proposition of law.

The instant case involves the same automobile accident which was before this court in *Kudrna v. Adamski*, 188 Or 396, 216 P2d 262. In the former case the plaintiff was Delores Kudrna, the four-year-old child of Rose Kudrna, now deceased, and Vincent Kudrna, her husband. She suffered personal injuries as the result of the accident. The sole legal question involved in and determined by that case was the status of said minor child as a passenger in the automobile. It was determined as a matter of law that Delores was not a guest in the car within the meaning of the Automobile Guest Statute of this state: § 115-1001, OCLA, and that defendant Laudie Adamski was liable in damages for ordinary, as distinguished from gross, negligence on his part.

Prior to and at the time of the accident in question, Rose Kudrna was the wife of Vincent Kudrna, and

the mother of two minor children. She was in excellent health and at the date of her death had a life expectancy of 35 years. The evidence discloses that she was a good wife and mother, fully performing her marital and maternal duties. The family at the time resided at Banks, in Washington county, but prior thereto had been residents of Lane county, where resided their family doctor.

Vincent Kudrna, the husband and father, was the owner of a 1946 Plymouth 4-door sedan, used for family purposes. Defendant Laudie Adamski is a brother of the decedent. On or about April 19, 1947, one of the minor children was in need of medical attention, and an appointment had been made with the family physician at Eugene, for April 19, at 10 a. m. Because of his employment, Vincent Kudrna was unable to make the trip to Eugene. Rose Kudrna, though holding a "learner's permit", was unable to drive an automobile. The defendant was requested to drive the Plymouth car on the trip from Banks to Eugene, and agreed to do so. For that purpose he went to the Kudrna home on the evening of April 18, and remained there overnight.

On the morning of April 19 the defendant, as driver of the automobile, the decedent, and the two children left Banks for Eugene. Decedent rode in the front seat of the car, and the two children, in the back seat. Just before leaving Banks, the decedent, according to the testimony of defendant, made the following statement: "Well, she said we didn't have too much time, that we would have to hurry along."

Highway 99W, sometimes known as West Side Pacific highway, is a state highway running in a general northerly and southerly direction between the city

of Portland, in Multnomah county, and Junction City, in Lane county. At the place of the accident the highway is paved with concrete, is 16 feet in width, and had the usual painted center stripe. There were gravel shoulders on each side of the paved portion of the highway. However, both north and south and at the place of the accident, the shoulders were not flush with the paved portion of the highway, and on the west side, in particular, there was a drop ranging from one to seven inches from the surface of the paved portion to the surface of the gravel shoulder.

Defendant was operating the automobile in a southerly direction along this highway immediately before and at the time of the accident. The accident occurred at a point on said highway approximately seven miles south of the city of Amity, and in Polk county.

The only testimony in the record respecting the manner in which the accident occurred was that of defendant, and his entire testimony in that regard is as follows:

"Q  Now will you tell us what happened at that time?

"A  Well, we were driving, going south, and my right rear wheel somehow went off the pavement, and in my attempt to regain control of the car it swung the car diagonally over to my left, and we hit the ditch on the other side; consequently, it rolled over.

"Q  Do you recall whether or not you applied your brakes?

"A  I don't recall. I might have, but I can't recall.

"Q  You don't recall applying your brakes?

"A  No.

"Q  And do you know how long it was that you drove along with this wheel off the road as you have described it?

"A  I have no idea.

"Q  Were you attempting to get the car back on the road; is that what you mean?

"A  Well——

"Q  Well, withdraw that. You turned the car to the right—rather to your left, to go back on the road?

"A  You mean after it went off the shoulder?

"Q  Yes, after it went off the road.

"A  I think I did.

"Q  You don't know?

"A  I am not positive about that either though.

"Q  Well, do you recall struggling with the wheel?

"A  Well, when I realized that the car was going to hit the other side of the road I tried to pull it over to my right.

"Q  You don't recall at any time during this applying your brakes?

"A  I don't recall.

"Q  Did you feel the car skid when it was crossing the road?

"A  Well, I could hear the tires squeal, if that's an indication of skidding."

The accident occurred about 8:30 a. m. William H. Roach, state police officer stationed at McMinnville, reached the scene of the accident at 9:17 a. m. He testified that the pavement was dry, and that there was a slight rise in the highway at the point of the accident. He also testified that the surface of the gravel shoulder ranged from one to seven inches below the surface of

the paved portion of the highway. Roach had 15-years' experience as a state police officer and had investigated many automobile accidents. As to the observations he made on the ground, Roach testified:

"Q What did you find at the time?
"A I found one automobile in a wrecked condition.

"Q Will you state where it was located there?
"A It was located on the east edge, left-hand side of the highway with wheels partially on the pavement and the front of the automobile north.

"Q Did you examine the roadway for skid-marks or—?
"A I did, yes, sir.

"Q Can you tell us from what you saw what had occurred to this car?
"A It would truly be an assumption as to what had occurred.

"Q Well, from the tracks as you saw them.
"A It appeared that the right rear wheel of the automobile had dropped off the short shoulder of the concrete highway, and in an effort for the operator to get it back on to the pavement he had lost control and which eventually led to the accident or the wreck of the car.

"Q What marks did you observe, Sergeant? Was there a mark going along this shoulder that you speak of?
"A In checking the tracks from the time the wheel dropped off the edge of the pavement he traveled off the pavement for approximately 100 to 110 feet, you couldn't tell exactly where it was, jerked back on the pavement and proceeded then in a sideways manner across to the south on to the left-hand side of the highway where it went over a shallow ditch and bumped the bank and then rolled over.

"Q Could you tell where the marks indicated, were there marks on that indicating how many times it had rolled over?

"A From what you could see there the marks indicated twice that the car top had hit the ground."

As the result of the accident, Rose Kudrna suffered injuries from which she died at Dallas, in Polk county, on April 19, 1947. This action was commenced by plaintiff, as administratrix of the estate of Rose Kudrna, deceased, pursuant to the provisions of § 8-903, OCLA, for the benefit of Vincent Kudrna, as surviving widower; Richard Kudrna, a son, aged 7 years; and Delores Kudrna, a daughter, aged 4 years, the sole surviving beneficiaries and dependents of decedent.

■ It is conceded that under the facts of this case, plaintiff's intestate did not occupy the status of a guest in the automobile within the meaning of § 115-1001, OCLA. It seems to be agreed between the parties that the relationship then existing between plaintiff's intestate and the defendant was that of principal and agent. In such cases the law is well established that the agent owes his principal the duty of exercising due care, and, for the agent's negligence proximately resulting in injury to the principal, the agent is liable in damages. *Alderman v. Noble*, 296 Mass 30, 4 NE2d 619, 620; *Shaker v. Shaker*, 129 Conn 518, 29 A2d 765, 766; 5 Blashfield, Cyc. of Automobile Law and Practice, 2, § 2881.

■ Under the doctrine of respondeat superior, a principal may be held liable for damages caused a third person by tortious acts committed by his agent while acting within the scope of his authority. 3 CJS, Agency, 186, § 254. It also is a rule of law that, if a principal suffers injury by reason of the negligence of a third

person, in which the negligence of his agent concurred as a proximate cause, the principal, though not personally negligent, cannot recover damages from such third party, because the contributory negligence of his agent will be imputed to him. 65 CJS, Negligence, 797, § 157; 804, § 161. But as between the principal and agent, the negligence of the agent will not be imputed to the principal. *Shaker v. Shaker,* supra; *Alderman v. Noble,* supra. The applicable rule is well stated in *Alderman v. Noble,* supra, at page 32, as follows:

" * * *. In certain relationships the negligence of one person is imputed to another in favor of third persons. But a wrongdoer cannot by a fiction of law attribute his wrongdoing to the victim. In the typical instances of imputed negligence, those of master and servant and principal and agent, the negligence of a servant or agent is not imputed to the master or principal so as to prevent recovery against the servant or agent for negligence injuring the person or property of the master or principal. * * * "

Therefore, in the instant case, the negligence of the defendant, if there was negligence on his part, cannot be imputed to the decedent so as to bar a recovery in this action. This, of course, is independent of the proposition that if a principal is actually directing or controlling the acts of the agent at the time the negligent act is committed, he cannot recover from the agent for such negligence, because, in such circumstances, the negligence is directly his own. In such cases, the doctrine of imputed negligence has no application whatever.

■ As an affirmative defense in this case, defendant in part alleged:

" * * * That during the course of said trip, said decedent assumed and exercised the right of

control over said defendant's operation of said automobile. * * *

"That whatever defendant did in the operation of said automobile was done pursuant to the direction and control of plaintiff's decedent; and if defendant was negligent in any manner or particular, which defendant denies, the same was negligence on the part of said decedent, which proximately contributed to said accident."

There is not a scintilla of evidence in the record that plaintiff's decedent, during the course of the trip which ended in the accident, assumed in any way whatever to direct or control defendant in the operation of the automobile. In fact, there is no testimony respecting any words spoken, or any acts by the parties riding in the automobile, during the entire course of travel from Banks to the scene of the accident. The only evidence regarding what was then done is that offered by defendant and previously quoted herein, and it will be noted that such evidence relates exclusively to the acts of defendant.

■ The statement of defendant as to what decedent said in the Kudrna home just before they started the trip, and which we quoted, is wholly irrelevant and immaterial to any issue in this case. It not only is too remote in time and place to afford a basis for defendant's affirmative defense, but it also is wholly insufficient for the purpose. Plaintiff's objection to that testimony when it was offered should have been sustained. For one to make a remark at the outset of an automobile trip that the parties were late and would have to hurry is a far cry from assuming, either directly or indirectly, actual direction or control over the operation of the vehicle during the course of travel.

■ The trial court not only submitted this affirmative defense to the jury, leaving it for the jury to decide whether or not decedent exercised control and direction as alleged, but also submitted to the jury the question of contributory negligence on the part of decedent. Contributory negligence was not affirmatively pleaded as a defense, as is required if such a defense is to be available, but the court evidently believed that it was included within the affirmative matter alleged as above set forth. The court instructed the jury as follows:

"The defendant in driving the automobile at the time and place of the accident was in the relationship at that time of principal and agent with the deceased and was an agent of the deceased and, of course, that of her husband which has no bearing in this matter. If you should find that, acting under the direction of the deceased at the time and place of the accident, the defendant was guilty of one or more of the acts of negligence alleged in the complaint, then in that event the plaintiff could not recover, because if he did this under the direction of the deceased, and you so find by a preponderance of satisfactory evidence, then, of couse, the plaintiff could not recover in this case.

"On the other hand, I instruct you that a person who is riding as a passenger in an automobile driven by someone else must exercise reasonable care for his or her own safety. While the passenger is entitled to assume that the driver of the car will exercise reasonable care, nevertheless the passenger may not remain supine and inert, as mere freight. Riding with another does not excuse the passenger from the duty of acting for his or her own safety as a reasonably prudent person would under like conditions. If you find, therefore, from satisfactory evidence in this case that the plaintiff's decedent, Rose Kudrna, failed to exercise reasonable care for her own safety, that would be negligence on her part,

and if you further find that any such negligence proximately contributed to the happening of the accident, then plaintiff may not recover and your verdict would be for the defendant.

"Now that is not to be confused with the instruction I gave you about a direction to the agent at the time and place of the accident. Those must be considered by you separately and depending upon what the evidence indicates to your minds."

Under the facts in this case there was no basis whatever, either in the pleadings or in the evidence, for submitting to the jury the question of contributory negligence on the part of decedent. To find decedent guilty of contributory negligence in any event, the jury would necessarily be compelled to indulge in pure speculation. As before observed, there is no evidence whatever as to what decedent said or did immediately prior to and at the time and place of the accident. Her lips were sealed in death, but there stands a presumption that speaks most potently as evidence in her behalf; viz., the presumption of due care on her part. The burden of proof was upon defendant to overcome that presumption, if indeed it might be overcome.

The trial court erred in submitting defendant's affirmative defense to the jury, as well as in submitting the question of contributory negligence. It is obvious that such error was prejudicial.

Plaintiff's first four assignments of error relate to certain requested instructions which the court refused to give to the jury. The effect of those instructions, had the court given them, would have been to direct a verdict in favor of plaintiff. The first request was to the effect that defendant was negligent in driving the automobile in that he failed to keep it under control; the second was that this negligence proximately

caused the death of Rose Kudrna; the third dealt with proximate cause in somewhat more detail; and the fourth directed a verdict in favor of plaintiff for such sum as the evidence disclosed was proper.

The court properly denied these requests. We are of the opinion that the question of defendant's alleged negligence was, under all the facts and circumstances of this case, one for determination by the jury, as also was the question of proximate cause.

■ The evidence discloses that defendant was driving the automobile along a dry, concrete highway, during daylight hours, and with no other traffic immediately approaching or following him. He had the whole highway to himself. He was not required to drive along the extreme right edge of the pavement.

■ The requirements of subds. (a) and (b) of § 115-327, OCLA, that the driver of a vehicle shall drive the same upon the right half of the highway, and that in driving upon such right half, he shall drive as closely as practicable to the right-hand edge or curb of the highway except when overtaking and passing another vehicle, does not contemplate strict compliance therewith except when a car meets and passes another coming from the opposite direction. *Spence, Adm'x, v. Rasmussen et al.,* 190 Or 662, 683, 226 P2d 819; *Weinstein v. Wheeler,* 135 Or 518, 295 P 196, 296 P 1079. Of course, one must keep to the right when being overtaken and passed by a vehicle coming from the rear. § 115-330, OCLA.

■ However, the requirements of § 115-327, OCLA, when applicable, demand only that one drive as "closely as practicable" to the right-hand edge or curb of the highway. This does not mean that the driver shall operate his vehicle so closely to the edge of the pavement as to create a danger of his car's right wheels accidentally

slipping off the paved portion of the highway at a point where to do so would be hazardous. It means that one should drive as closely to the right-hand edge or curb of the highway as a reasonably prudent person would drive his vehicle under all the conditions and circumstances existing. But under the facts of this case the provisions of the statutes referred to have no application. As before stated, defendant had the entire highway to himself.

However, it must be borne in mind that a driver of a motor vehicle has a lawful right to drive on the gravel shoulder of the highway on his own right-hand side whenever such gravel shoulder is suitable for travel. In other words, the mere fact that one drives the whole or any part of his automobile on the gravel shoulder does not constitute negligence in and of itself, nor is such driver guilty of negligence in leaving the paved portion of the highway to drive on such shoulder, if it may be done in reasonable safety. But there might be conditions under which it would be negligence for the driver to leave the paved portion of the highway with any part of his vehicle. Each case necessarily depends upon its own facts and circumstances.

As before observed, the evidence here shows that, at the scene of the accident involved, there was an abrupt drop from the right-hand edge and surface of the pavement to the gravel shoulder, ranging from one to seven inches; and where the wheel marks of the automobile were visible along the shoulder, the drop was from five to seven inches. Defendant was in exclusive control of the operation of the car. After the rear wheel had dropped off the pavement and onto the shoulder, he drove the car for a distance of 100 feet before he was able to swing it to the left and back upon

the pavement. Apparently he failed to apply his brakes or slow down while traveling that distance of 100 feet, and at the time the car swung back upon and across the pavement and into the ditch on the left-hand side of the highway, it was going at such speed as to cause it to roll over twice before finally coming to rest. It is obvious that defendant had no control over the vehicle while it was crossing the pavement and when it crashed. The evidence will also support plaintiff's contention that he had no such control when the right rear wheel dropped onto the gravel shoulder and while it was traveling the 100 feet along the shoulder. A jury might well find that the chain of causation proximately resulting in this fatal accident commenced when the right rear wheel left the pavement, and that lack of proper control over the vehicle by defendant was the cause thereof.

■ Hence, considering the facts and circumstances of this case, it was for the jury to determine whether or not defendant kept and maintained proper control over the vehicle, and whether or not such failure on his part to maintain such control, if he did so fail, was a proximate cause of decedent's death.

Plaintiff assigns as error the refusal of the court to give the following instruction to the jury:

"I instruct you that it was incumbent upon defendant to at all times have his automobile under reasonable control; that is, under such a degree of control as a reasonably prudent person would have his automobile, and if you should find from a preponderance of the evidence that the defendant failed to have his automobile under such a degree of control at the time and place of the accident, then he would be guilty of negligence, and if such negligence was a proximate cause of plaintiff's injury, and if plaintiff was free from negligence, then your verdict must be for the plaintiff."

The only instruction given by the court to the jury in which the matter of control is in any way mentioned was that respecting the statutory basic rule, which rule has reference exclusively to the matter of speed of a motor vehicle. § 115-320, OCLA, as amended by ch 458, Oregon Laws 1941. The court instructed:

"In this state we have a statute concerning the operation of motor vehicles which reads as follows: 'No person shall drive a vehicle upon a highway at a speed greater than is reasonable and prudent, having due regard to the traffic, surface and width of the highway, and the hazard at intersections and any other conditions then existing. Nor shall any person drive at a speed which is greater than will permit the driver to exercise proper control of the vehicle and to decrease speed or to stop as may be necessary to avoid colliding with any person, vehicle or other conveyance upon or entering the highway in compliance with legal requirements, and with the duty of drivers and other persons using the highway to exercise due care.' This rule is known as the basic rule governing the operation of motor vehicles and it prescribes the standard of reasonable care with respect to the speed of an automobile and does not in and of itself establish any fixed maximum speed limit."

Wholly independent of statute and entirely disassociated from the question of speed, a common law duty devolves upon the operator of a motor vehicle to keep and maintain his car under proper control; this duty to maintain a proper control is a continuing duty; it is such control as would be kept and maintained by a reasonably prudent person in like or similar circumstances. The matter of control as stated in the basic rule relates only to the rate of speed at which it. is permissible to drive a motor vehicle. An instruction upon the basic rule, therefore, does not include any

information whatever respecting the common law duty as to control. The plaintiff was entitled to have the jury instructed pursuant to the request, and it was error for the court to refuse the same. We observe that the requested instruction was more favorable to defendant than the evidence warranted, in that it contained a condition regarding negligence on the part of plaintiff. The rules just stated are fundamental, and it is unnecessary to encumber this opinion by citing authorities in support thereof, many of which may be found in our own prior decisions.

■ Plaintiff also excepts to the giving of the following instruction to the jury:

> "I instruct you that when the driver of a vehicle is suddenly confronted with an emergency, not of his own creation and it was not brought about by any negligence upon his part or carelessness and it was not brought about by him, his actions must be judged in the light of the emergency. His conduct is not held to the same standard that would be expected of one who had more opportunity for reflection, but allowance must be made for the stress of the emergency. In passing upon his conduct, therefore, you must view it in the light of the circumstances as they appeared at the time, including any emergency that existed, if there was an emergency."

It is, of course, a well-established rule of law in this state that, if one is confronted by a sudden emergency, the creation of which is not due to any fault or negligence on his part, and that by reason thereof his judgment is clouded, and he does something that he might not have done, or fails to do something that he might have done, if his judgment had not been so clouded, he cannot be held responsible in such circumstances for an error in judgment, if any, even though

he did the wrong thing in trying to save himself and avoid accident; provided he acted as a reasonably prudent person would have acted in like or similar circumstances. *Noble v. Sears,* 122 Or 162, 257 P 809.

But it is elementary that an instruction respecting sudden emergency should be given only in those cases where it is applicable. Under the facts of the instant case it was wholly inapplicable. If an emergency existed in this case, it was one of defendant's own making. In such circumstances, defendant is not permitted to take advantage of his own wrong as an excuse for his failure to exercise due care, if he did so fail. *Nicholas v. Fennell,* 184 Or 541, 199 P2d 905. The court erred in giving the instruction in question.

The trial court sustained objections to the admission in evidence of certain photographs of the automobile involved in the accident. Plaintiff's assignment of error No. 16 relates to that. The photographs were not properly identified. The trial court did not err in rejecting them.

The trial court also sustained an objection to certain offered testimony of state police officer Roach respecting the speed of the automobile. This ruling forms the basis of plaintiff's assignment of error No. 17. The trial court did not err in this ruling.

Though not strictly necessary to a decision, nevertheless, we believe we should take cognizance of the objection made by plaintiff to the court's instruction upon the measure of damages in this case. The court instructed the jury:

"* * * In fixing the damages, I instruct you that, if you come to that question in this case, the proper measure of damages is the actual pecuniary loss, if any, sustained by the surviving husband and dependents and a result of the death of the decedent.

You may not allow anything for the grief and anguish of surviving relatives, nor may you allow anything for the pain and suffering of the decedent. If the surviving husband and dependents sustained no monetary loss as a result of decedent's death, then you may not allow any damages in this case. In determining the monetary loss, if any, to the surviving husband and dependents, you may consider the age, health and physical condition of the decedent, her habits with respect to industry and thrift, her capacity to earn money, and how many years of her normal life expectancy she would be likely to continue any such capacity. I have said that her life expectancy under the table of mortality is fixed at 35 years. That is a matter that is within your sound discretion to determine, what the expectancy may or may not have been, if you come to that phase of the case. You should also consider her relationship to the survivors, her obligations to provide for them, and her disposition to do so as shown by the evidence, if any, and from all of these circumstances determine what, if any, damages have been caused to the surviving husband and dependents by reason of her death. The ultimate question on damages in this type of case is what amount of money at the present time would give the same pecuniary assistance and support that the beneficiaries might reasonably have expected from the deceased if she had lived.

"Now, outside of the instructions that I have given you with reference to this measure of damages, there is no fixed rule which the Court can state to you. The matter necessarily is left to the sound judgment and discretion of the jury under the instructions that the Court has given to you and without any feeling of prejudice or bias or passion or sympathy of any kind. The amount of damages, like any other element in this case, is a fact to be established by the testimony. And that determination of this question cannot be left to mere surmise or speculation, but is left to your sound

discretion to do what you believe, under the evidence and under the law the Court has given to you, to be a fair and just verdict in damages.

"If you find from the evidence that the decedent's children were not dependent upon her for support in a pecuniary way, then, of course, you could not allow any damages for that.

"And if you find that decedent's husband did not sustain a pecuniary loss by reason of her death, you could not allow any damages because of that.

"If you find that upon the remarriage of Vincent Kudrna that any pecuniary loss resulting from decedent's death ceased, then you could not allow any damages in the case beyond the period between decedent's death and the husband's remarriage. In other words, there was no pecuniary loss sustained after the remarriage of Mr. Kudrna. You could only consider what pecuniary loss, if any, he sustained between the time of the death and the time of remarriage.''

■ We are of the opinion that the fact of remarriage of decedent's widower has nothing whatever to do with the measure of damages. The loss sustained by the widower, as a beneficiary, is fixed as of the date of death. What may have transpired subsequent thereto is wholly immaterial. That also is true respecting any pecuniary loss suffered by the children.

■ Furthermore, we are of the opinion that the words ''pecuniary loss'', as applied to the damages suffered by beneficiaries of a deceased wife and mother, mean something more than the actual earning of money or money's worth or contributions to the support of the beneficiaries at or before the date of the death, where there was a reasonable expectation of pecuniary benefit from the continuance of the life. It consists not only of the loss of financial assistance which the beneficiaries might reasonably be expected to have received

from the deceased had her career not been shortened by the act of defendant, but also the loss of other things which have a pecuniary worth, such as the loss of a mother's care and attention to the physical, moral, and educational welfare of her children, and a husband's loss of her services in the household. The measure of damages is the monetary value of such services. *Hansen v. Hayes*, 175 Or 358, 154 P2d 202; 16 Am Jur, Death, 122, § 182; 25 CJS, Death, 1245, § 101b; McCormick, Damages (Hornbook Series), 351, § 100.

■ As a usual thing, the wife and mother confines her activities to the home, doing the necessary household chores and giving attention to the care, training, and education of her children. She is seldom the breadwinner of the family. Her services in the respects mentioned have a monetary value. When a husband or child is deprived of those services, he sustains a pecuniary loss. In determining the amount of damages in cases of this character, where future contingencies and a variety of circumstances must be taken into consideration, the award must be left to turn on the sound sense and deliberate judgment of the jury, and, in estimating the value of domestic services rendered by a wife or mother, the jury may consider the value of many services incapable of exact proof but measured in the light of their own observation and experience. 25 CJS, Death, 1253, § 103b.

In McCormick, Damages (Hornbook Series), 351, § 100, the rule is stated:

"For the death of the wife, * * * the pecuniary injury sustained by the husband consists chiefly of the loss of the value of her services in the household, or of her help and advice in his business, if it be shown that such help and advice were actually furnished by her. * * * As in case of the death

of the father, the pecuniary loss to the children from the mother's death includes, not only deprivation of support, if she was the breadwinner, and loss of expected pecuniary contributions, *but the loss of her care and attention to their physical, moral, and educational welfare."* (Italics ours.)

Upon a retrial of this action the jury should be correctly instructed as to the measure of damages in accordance with this opinion.

Judgment reversed.